# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NORTHWEST SCHOOL OF SAFETY, et al.,

Plaintiffs/Appellants,

v.

BOB FERGUSON, Attorney General of Washington, et al.,

Defendants/Appellees.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

No. 3:14-cv-6026 BHS

The Honorable Benjamin H. Settle, United States District Court Judge

## BRIEF OF APPELLEES

ROBERT W. FERGUSON
*Attorney General*

NOAH G. PURCELL, WSBA #43492
*Solicitor General*

R. JULY SIMPSON, WSBA #45869
*Assistant Attorney General*

JEFFREY T. EVEN, WSBA #20367
REBECCA R. GLASGOW, WSBA #32886
*Deputy Solicitors General*

PO Box 40100
Olympia, WA 98504-0100
360-753-6200

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................... 1

II. STATEMENT OF JURISDICTION ............................................... 3

III. COUNTERSTATEMENT OF ISSUES ......................................... 3

IV. STATEMENT OF THE CASE ...................................................... 4

V. SUMMARY OF ARGUMENT ...................................................... 7

VI. ARGUMENT ................................................................................. 9

    A. This Court's Test for Standing in Pre-Enforcement Challenges to Statutes is Well Established ....................................................... 9

    B. Plaintiffs Failed to Show Standing Under This Court's Well-Established Test ......................................................................... 11

    C. None of Plaintiffs' Arguments for Ignoring or Modifying This Court's Standing Test is Persuasive ........................................... 14

        1. *MedImmune* Does Not Create a New Pre-enforcement Standard ........................................................................... 14

        2. A Subjective Chilling of Behavior Due to the Mere Existence of a Statute is No Substitute for an Injury-in-Fact and Does Not Create a Different Standing Test ............................... 18

            a. The mere existence of a statute does not show injury, even if it chills some behavior .......................................... 19

            b. A subjective chilling of behavior does not give rise to a different standing test, such as the First Amendment test .......... 21

            c. Even if the Court applied First Amendment standing principles, Plaintiffs would lack standing ................................... 27

D.  In the Alternative, This Court Should Affirm Dismissal for
    Plaintiffs' Failure to Show Prudential Ripeness and Standing ................29

    1.  Prudential Ripeness ...........................................................................29

    2.  Prudential Standing ...........................................................................33

VII.  CONCLUSION .............................................................................................34

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Gardner,*
  387 U.S. 136 (1967) ...................................................................................... 30

*Ariz. Right to Life PAC. v. Bayless,*
  320 F.3d 1002 (9th Cir. 2003) ............................................................. 2, 22-23

*Assoc. of Pub. Agency Customers v. Bonneville Power Admin.,*
  733 F.3d 939 (9th Cir. 2013) ...................................................................... 12

*Baldwin v. Sebelius,*
  654 F.3d 877 (9th Cir. 2011) ................................................................ 11,17

*Cal. Pro-Life Council, Inc. v. Getman,*
  328 F.3d 1088 (9th Cir. 2003) ....................................................... 8, 22, 27

*Cal. Tow Truck Ass'n v. City & Cty. of San Francisco,*
  693 F.3d 847 (9th Cir. 2012) ...................................................................... 12

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
  598 F.3d 1115 (9th Cir. 2010) ...................................................................... 9

*Easyriders Freedom F.I.G.H.T. v. Hannigan,*
  92 F.3d 1486 (9th Cir. 1996) ...................................................................... 31

*Ezell v. City of Chicago,*
  651 F.3d 684 (7th Cir. 2011) ...................................................................... 23

*Friendly House v. Napolitano,*
  419 F.3d 930 (9th Cir. 2005) ...................................................................... 11

*Human Life of Wash., Inc. v. Brumsickle,*
  624 F.3d 990 (9th Cir. 2010) ........................................................... 11, 17,22

*Humanitarian Law Project v. U.S. Treasury Dep't,*
  578 F.3d 1133 (9th Cir. 2009) ................................................. 16, 20-22, 24

*Jacobus v. Alaska*,
  338 F.3d 1095 (9th Cir. 2003) ..................................................................... 11

*Lair v. Bullock*,
  697 F.3d 1200 (9th Cir. 2012) ..................................................................... 17

*Laird v. Tatum*,
  408 U.S. 1 (1972) ..................................................................... 20

*Libertarian Party of Los Angeles Cty. v. Bowen*,
  709 F.3d 867 (9th Cir. 2013) ..................................................................... 11, 17

*Lopez v. Candaele*,
  630 F.3d 775 (9th Cir. 2010) ..................................................................... 28

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ..................................................................... 9, 27, 29

*McCormack v. Hiedeman*,
  694 F.3d 1004 (9th Cir. 2012) ..................................................................... 11, 17

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ..................................................... 2-3, 7, 14-17, 25-26

*Mendia v. Garcia*,
  768 F.3d 1009 (9th Cir. 2014) ..................................................................... 12

*Myers v. U.S. Parole Comm'n*,
  813 F.2d 957 (9th Cir. 1987) ..................................................................... 29

*Novak v. United States*,
  795 F.3d 1012 (9th Cir. 2015) ..................................................................... 12

*Oklevueha Native Am. Church of Haw., Inc. v. Holder*,
  676 F.3d 829 (9th Cir. 2012) ..................................................... 9, 11-12, 17, 30

*Protectmarriage.com-Yes on 8 v. Bowen*,
  752 F.3d 827 (9th Cir. 2014) ..................................................................... 11, 28

*Sacks v. Office of Foreign Assets Control*,
   466 F.3d 764 (9th Cir. 2006) ........................................................................ 11

*San Diego Cty. Gun Rights Comm. v. Reno*,
   98 F.3d 1121 (9th Cir. 1996) ..............................................12-13, 19, 30-34

*Scott v. Pasadena Unified Sch. Dist.*,
   306 F.3d 646 (9th Cir. 2002) ........................................................ 10, 19, 30

*Stoianoff v. Montana*,
   695 F.2d 1214 (9th Cir. 1983) ............................................................ 10, 19

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109 (9th Cir. 2009) ........................................................ 9, 11, 17

*Susan B. Anthony List v. Driehaus*,
   ___ U.S. ___, 134 S. Ct. 2334 (2014) .................................................. 17, 18

*Terrace v. Thompson*,
   263 U.S. 197 (1923) ............................................................................ 25, 26

*Thomas v. Anchorage Equal Rights Comm'n*,
   220 F.3d 1134 (9th Cir. 2000) ...........................1-3, 6-7, 10-15, 17-18, 24, 26

*United Pub. Workers of Am. (C.I.O) v. Mitchell*,
   330 U.S. 75 (1947) ...................................................................................... 20

*United States v. Mazurie*,
   419 U.S. 544 (1975) .................................................................................... 30

*United States v. Mindel*,
   80 F.3d 394 (9th Cir. 1996) ........................................................................ 24

*Valle del Sol Inc. v. Whiting*,
   732 F.3d 1006 (9th Cir. 2013) .................................................................... 24

*Valley Forge Christian Coll. v. Ams. United for
Separation of Church & State, Inc.*,
   454 U.S. 464 (1982) ................................................................................ 9, 33

*Ventura Mobilehome Cmtys. Owners Ass'n v. City of San Buenaventura*,
371 F.3d 1046 (9th Cir. 2004) ........................................................ 29

*W.E.B. DuBois Clubs of America v. Clark*,
389 U.S. 309 (1967) ................................................................. 20-21

*Wolfson v. Brammer*,
616 F.3d 1045 (9th Cir. 2010) ............................................ 2, 8, 19, 27

## Constitutional Provisions

U.S. Const. amend. I ...........................................8, 20, 22-23, 27-28

U.S. Const. amend. II................................................................ 4, 12

U.S. Const. amend. XIV .................................................................. 5

U.S. Const. art. III ......................................................8-9, 20-21, 33

Wash. Const. art. I, § 24................................................................. 4

## Other Authorities

Initiative 594 (2014) ................1,4-6, 12-14, 18-19, 21-22, 24-25, 28-29, 32-34

http://results.vote.wa.gov/results/20141104/State-Measures-Initiative-
Measure-No-594-Concerns-background-checks-for-firearm-sales-and-
trans .............................................................................................. 4

# I.    INTRODUCTION

Plaintiffs ask this Court to work a radical change in standing rules to allow them to bring a hypothetical case. The Court should decline.

In November 2014, Washington voters overwhelmingly passed Initiative 594 (I-594) to expand firearm background checks. Just weeks after the law took effect, and before it had ever been enforced, Plaintiffs filed this case, claiming that parts of I-594 are too vague and violate their right to bear arms.

The district court properly dismissed the case for lack of standing. In this Circuit, to establish standing in a pre-enforcement challenge to a statute outside the free speech context, a plaintiff must show "a genuine threat of imminent prosecution." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) (internal quotation marks omitted). To assess whether such a threat exists, this Court considers three factors: (1) whether the plaintiff has a concrete plan to violate the law; (2) whether the plaintiff has been threatened with prosecution; and (3) whether there is a history of prosecution under the law. *Id.* Plaintiffs admit that they cannot show standing under this test. It is undisputed that they have no intent to violate I-594, none of them has been threatened with prosecution, and no one in Washington has yet been prosecuted for violating I-594. ER 10.

Unable to show standing under *Thomas*, Plaintiffs instead offer two arguments as to why this Court should ignore or modify *Thomas*. Both fail.

First, they claim that *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), demands a different approach. But *MedImmune* did not remotely involve the issue here and in *Thomas*: when a party may challenge a statute before it is enforced. Instead, it addressed when a party may preemptively sue *another private party*. This Court has never cited it as affecting *Thomas*.

Second, Plaintiffs cite free speech cases to argue that "standing is satisfied where refraining from violating the law eliminates the imminent threat of prosecution." Br. of Appellants at 11. But this Court has long held that standing rules for free speech cases are "unique." *Ariz. Right to Life PAC v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003). And Plaintiffs' rule would mean that anyone who "refrains from violating" any law would have standing to challenge it, a rule this Court has repeatedly rejected. *See, e.g.*, *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) ("Neither the 'mere existence of a proscriptive statute' nor a 'generalized threat of prosecution' satisfies the 'case or controversy' requirement.") (quoting *Thomas*, 220 F.3d at 1139).

There is thus no reason to ignore or alter *Thomas* here. Even if there were, Plaintiffs' claim fails on prudential grounds. The Court should affirm.

## II. STATEMENT OF JURISDICTION

Appellees agree with Appellants' jurisdictional statement.

## III. COUNTERSTATEMENT OF ISSUES

1. Has a plaintiff suffered a concrete injury where he curtails his behavior based on his own reading of a statute, even though no government official has told him that his conduct is illegal and no one has been prosecuted for engaging in the same conduct?

2. Did *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), a case about when a party may preemptively sue another private party, modify the well-established test from *Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134 (9th Cir. 2000) (en banc), about when a party has standing to bring a pre-enforcement challenge to a statute?

3. Should this Court adopt a new standing rule allowing a plaintiff raising any type of constitutional claim to establish standing simply by showing that he is "refraining from violating the law" he seeks to challenge?

# IV. STATEMENT OF THE CASE

The people of Washington adopted I-594 in the 2014 general election, with over fifty-nine percent of voters supporting the measure.[1] I-594's purpose was to strengthen the gun background-check system by extending the background-check requirement to all gun sales and transfers in the state, with limited exceptions. I-594, § 1. The people found that expanding the application of background checks for gun transfers was "an effective and easy mechanism to ensure that guns are not purchased by or transferred to those who are prohibited from possessing them." *Id.* The initiative defined "transfer" as well as the "persons" to whom the law would apply. *Id.* § 2(17), (25). I-594 took effect on December 4, 2014.

On December 30, 2014, Plaintiffs filed a challenge to one aspect of I-594 in the Western District of Washington at Tacoma. *See* ER 13-36. Plaintiffs do not broadly challenge the background check requirement for the purchase and sale of firearms, but allege that I-594's restrictions on the "non-commercial transfer" of firearms violate the Second Amendment to the United States Constitution as well as article I, section 24 of the Washington

---

[1] http://results.vote.wa.gov/results/20141104/State-Measures-Initiative-Measure-No-594-Concerns-background-checks-for-firearm-sales-and-transfers.html (last visited November 9, 2015).

Constitution. ER 33-34. Plaintiffs further allege that I-594's provisions related to non-commercial transfers of firearms are impermissibly vague, violating the Fourteenth Amendment to the United States Constitution, as well as the Washington Constitution. ER 34-35.

Plaintiffs are a variety of individuals and entities claiming uncertainty as to whether their desired conduct would satisfy the definition of "transfer." ER 15-22, 31-32. For example, Plaintiffs Darryl Lee and Xee Del Real are a cohabiting couple who share a firearm that they keep in their home and claim that they "cannot determine whether their joint use of their firearm is criminalized by I-594." ER 18. Similarly, Plaintiff Joe Waldron is a Florida resident who frequently travels to Washington and allegedly "would check a firearm in his luggage but cannot determine whether" this would violate I-594. ER 18. Also listed as Plaintiffs were two business entities, a corporation and a trust, as to which Plaintiffs say they are unclear who within the entity is a "person" covered by the law. ER 32.

Plaintiffs concede that they have no intention of violating I-594. ER 15-22. Rather, Plaintiffs allege that they would have engaged in certain behavior but now will not because of I-594. ER 31-32.

Plaintiffs also admit that no one has yet been arrested, cited, or prosecuted for violating I-594. ER 26. Plaintiffs further cannot cite to any instance in which anyone, including any of the Plaintiffs, has been threatened with prosecution or enforcement. Instead, Plaintiffs argue that Defendants have "refused" to enforce the law, Br. of Appellants at 24, relying on one comment by a spokesperson for the Washington State Patrol made in response to a single planned protest where individuals would be passing guns back and forth as a form of political theater: "We don't think that we could prove that that's a transfer." Br. of Appellants at 8; ER 25. The comment was not a general statement concerning the initiative. SER 15, 43.

Defendants filed a motion to dismiss for lack of subject matter jurisdiction, asserting that Plaintiffs had shown neither standing nor ripeness under the Ninth Circuit's test for pre-enforcement challenges to statutes, which requires a "genuine threat of imminent prosecution." *Thomas*, 220 F.3d at 1139 (internal quotation marks omitted). In response, Plaintiffs never argued that they met the *Thomas* test. Instead, they argued that the test had been overruled by the Supreme Court in 2007. ER 9 ("Plaintiffs . . . contend that *Thomas* is outdated and has been rejected by the Supreme Court."). Defendants replied, citing numerous cases applying the test in the Ninth Circuit since 2007. The

district court rejected Plaintiffs' view, applied the *Thomas* test, and dismissed the case for lack of standing, not reaching the issue of whether Plaintiffs had shown prudential standing or ripeness. ER 5-12. Plaintiffs appealed.

## V.    SUMMARY OF ARGUMENT

Plaintiffs seek to challenge a brand new law that has never been enforced or even threatened to be enforced against them or anyone else. Given these facts, the district court properly held that Plaintiffs lack standing under the controlling pre-enforcement review test in the Ninth Circuit, announced in *Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134 (9th Cir. 2000) (en banc). None of the factors relevant under *Thomas* favors Plaintiffs: they have no plan to violate the law, they have never been threatened with prosecution for violating the law, and there is no history of prosecution under the law. Plaintiffs admit all of this.

Aware that they cannot meet the controlling test, Plaintiffs ask this Court to ignore or modify the test based on (1) a 2007 Supreme Court decision addressing a different topic, and (2) their allegations of subjective chilling of their behavior. Neither argument withstands scrutiny.

First, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), did not create a new pre-enforcement standard. That case had nothing to do with what

a party must show to establish standing to challenge a statute before it is enforced. Instead, it addressed when a party may preemptively sue *another private party*. This Court has continued to apply *Thomas* post-*MedImmune*, properly recognizing that the decision had no impact on *Thomas*.

Second, a subjective chilling of behavior is not a substitute for an injury-in-fact and does not bring into play a different standing test. This Court has repeatedly held that "[n]either the 'mere existence of a proscriptive statute' nor a 'generalized threat of prosecution' satisfies the 'case or controversy' requirement." *Wolfson*, 616 F.3d at 1058 (quoting *Thomas*, 220 F.3d at 1139). While the Court has adopted a more relaxed approach to standing in free speech cases, it has never extended that approach beyond the First Amendment, and there is no reason to do so here. Moreover, even if the Court did apply its First Amendment standard, Plaintiffs cannot meet it because they have shown no "credible threat of prosecution"; a naked assertion of chilled behavior will not create standing. *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003).

In the alternative, this Court should affirm dismissal for Plaintiffs' failure to show prudential standing and ripeness. Even if a plaintiff can show Article III standing, courts decline to find standing on prudential grounds when

a plaintiff asserts merely an "abstract question" that amounts to a "generalized grievance." *See, e.g.*, *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474-75 (1982). That is all Plaintiffs allege here. As to ripeness, "[c]ourts have regularly declined on prudential grounds to review challenges to recently promulgated laws or regulations in favor of awaiting an actual application of the new rule." *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 837 (9th Cir. 2012). The Court should do the same here.

## VI.   ARGUMENT

### A.   This Court's Test for Standing in Pre-Enforcement Challenges to Statutes is Well Established

It is Plaintiffs' burden to establish standing under Article III and to show that prudential considerations support review. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009). To establish standing under the Constitution, Plaintiffs must demonstrate that they "have suffered an injury in fact" that is both "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted).

To ensure that a plaintiff's injury is both "concrete" and "actual or imminent," *Lujan*, 504 U.S. at 560, this Court has long held that a person wishing to challenge a statute before it is enforced "must demonstrate a genuine threat that the allegedly unconstitutional law is about to be enforced against him," *Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983). "The mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III." *Id.*; *see also Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 656 (9th Cir. 2002) (same); *Thomas*, 220 F.3d at 1139 (same).

Fifteen years ago, in an en banc opinion, this Court confirmed and refined the test for how a plaintiff can show injury where he seeks to challenge a statute before it has been applied to him. The Court held that to avoid resolving hypothetical disputes, it would require such a plaintiff to show "a genuine threat of imminent prosecution." *Thomas*, 220 F.3d at 1139 (internal quotation marks omitted). In assessing whether plaintiffs have shown such a threat, the Court held that it would consider three factors: "[1] whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past prosecution or

enforcement under the challenged statute." *Id.* No factor is dispositive, and all should be considered. *See, e.g.*, *id.* at 1139-41.

This test remains the law, and this Court has repeatedly and routinely applied it since *Thomas*. *See, e.g.*, *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 839 (9th Cir. 2014); *Libertarian Party of Los Angeles Cty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013); *McCormack v. Hiedeman*, 694 F.3d 1004, 1021 (9th Cir. 2012); *Oklevueha Native Am. Church*, 676 F.3d at 835; *Baldwin v. Sebelius*, 654 F.3d 877, 879 (9th Cir. 2011); *Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010); *Stormans*, 586 F.3d at 1122; *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 773 (9th Cir. 2006); *Friendly House v. Napolitano*, 419 F.3d 930, 932 (9th Cir. 2005); *Jacobus v. Alaska*, 338 F.3d 1095, 1104-05 (9th Cir. 2003).

## B. Plaintiffs Failed to Show Standing Under This Court's Well-Established Test

As in the district court, Plaintiffs never even argue that they meet the *Thomas* test of showing "a genuine threat of imminent prosecution." *Thomas*, 220 F.3d at 1139 (internal quotation marks omitted). This is understandable, as they have no plausible argument that they can show standing under the factors that test considers.

The first factor is "whether the plaintiffs have articulated a 'concrete plan' to violate the law in question." *Id.* Here, it is undisputed that Plaintiffs have no intention of violating I-594. *See, e.g.*, Br. of Appellants at 1, 6, 11 (noting "Plaintiffs' intentional choice to refrain from violating the challenged statute"); ER 10 ("Plaintiffs explicitly concede that they have no intention of violating I-594."). They thus cannot satisfy this factor.

Turning to the second factor, "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings," *Thomas*, 220 F.3d at 1139, Plaintiffs have not alleged any such warning or threat, ER 10 ("Plaintiffs have failed to allege any specific warning or threat to initiate a prosecution."). This is clearly insufficient. *See, e.g.*, *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996) ("Here, plaintiffs do not identify even a general threat made against them.").[2] Plaintiffs argue in passing that it is unfair to enforce this requirement because the State is supposedly refusing to enforce the law. Br. of Appellants at 24. But their only evidence is

---

[2] Although *San Diego County*'s analysis of the Second Amendment was overruled by subsequent cases, its standing analysis remains good authority in this Circuit, as reflected by the many recent cases citing it. *See, e.g.*, *Novak v. United States*, 795 F.3d 1012, 1019 (9th Cir. 2015); *Mendia v. Garcia*, 768 F.3d 1009, 1015 (9th Cir. 2014); *Assoc. of Pub. Agency Customers v. Bonneville Power Admin.*, 733 F.3d 939, 951 (9th Cir. 2013); *Cal. Tow Truck Ass'n v. City & Cty. of San Francisco*, 693 F.3d 847, 866 (9th Cir. 2012); *Oklevueha Native Am. Church*, 676 F.3d at 838.

the State's response to a single political protest. *See* ER 25; SER 15, 43. And even if Plaintiffs had offered real evidence of deliberate non-enforcement, this Court has treated such evidence as a factor weighing *against* standing and ripeness. *See, e.g.*, *Thomas*, 220 F.3d at 1141 (citing as one reason that the case was unripe that the relevant enforcement "agencies are now surely aware of these landlords and still have launched no enforcement proceedings").

The final factor, "the history of past prosecution or enforcement under the challenged statute," *Thomas*, 220 F.3d at 1139, also runs against Plaintiffs. Plaintiffs concede that they are unaware of any "arrests, citations, or prosecutions related to a violation of I-594." ER 26; s*ee also* ER 10 ("Plaintiffs have failed to allege any history of past prosecution or enforcement of I-594."). Simply put, Plaintiffs cannot show *any* "history of past prosecution or enforcement under the challenged statute." *Thomas*, 220 F.3d at 1139. "Plaintiffs' inability to point to any history of prosecutions undercuts their argument that they face a genuine threat of prosecution." *San Diego Cty. Gun Rights Comm.*, 98 F.3d at 1128. Indeed, in *Thomas*, this Court found insufficient history of prosecution even where the ordinance had been enforced, but the enforcement was rare and was civil rather than criminal.

*Thomas,* 220 F.3d at 1140-41. Here, by contrast, the law is brand new and there is no history of enforcement at all.

In short, every factor this Court considers in deciding whether Plaintiffs have shown a "genuine threat of imminent prosecution," *id.* at 1139, demonstrates that they have not. No one has been prosecuted under I-594, no one has threatened any Plaintiff with prosecution, and no Plaintiff has a concrete plan to violate the initiative. Plaintiffs have shown no injury.

**C.    None of Plaintiffs' Arguments for Ignoring or Modifying This Court's Standing Test is Persuasive**

Plaintiffs urge this Court to ignore *Thomas* and create a new standing test just for them. They offer two theories. Neither withstands scrutiny.

**1.    *MedImmune* Does Not Create a New Pre-enforcement Standard**

In the district court, Plaintiffs argued that *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), implicitly overruled *Thomas*. ER 9 ("Plaintiffs . . . contend that *Thomas* is outdated and has been rejected by the Supreme Court."). On appeal, they abandon that position and instead argue that *MedImmune* creates an alternative test by which a plaintiff can show standing when bringing a pre-enforcement challenge to a statute. Br. of Appellants at 13-14. This new argument is equally unavailing.

The fundamental problem with Plaintiffs' position is that *MedImmune* simply did not involve the issue addressed in *Thomas*: when a party may challenge a statute before it is enforced. *MedImmune* was about when a party may preemptively sue *another private party*. Specifically, the question presented was whether a "patent licensee [must] terminate or be in breach of its license agreement before it can seek a declaratory judgment that the underlying patent is invalid." *MedImmune*, 549 U.S. at 120-21. That question has nothing to do with the issues in this case or in *Thomas*.

Because *MedImmune* had nothing to do with a pre-enforcement challenge to a statute, the Supreme Court understandably announced no new rule to be applied in such cases. Rather, the Court simply described its prior jurisprudence as to ripeness and standing in lawsuits against the government before moving on to address the actual situation in the case: ripeness and standing in a private dispute, where "Supreme Court jurisprudence is more rare." *Id.* at 129-30. The language Plaintiffs cite as creating an alternative to *Thomas* was, therefore, not a new holding of the Court, it was a description of past case law, case law that pre-dates *Thomas*. That language could not and did not create an alternate standard for pre-enforcement review cases.

This is particularly true because the language Plaintiffs cite from *MedImmune* and the prior holdings it describes are entirely consistent with *Thomas. MedImmune* summarized how a plaintiff can establish standing and ripeness "*where threatened action* by government is concerned." *MedImmune*, 549 U.S. at 128 (emphasis added and omitted). The Court noted: "For example, in *Terrace v. Thompson*, 263 U.S. 197 (1923), the State threatened the plaintiff with forfeiture of his farm, fines, and penalties if he entered into a lease with an alien in violation of the State's anti-alien land law. *Given this genuine threat of enforcement*, we did not require," the plaintiff actually to violate the law. *Id.* at 129 (emphasis added). In other words, *MedImmune* recognized the requirement in prior Supreme Court cases and in *Thomas* that a Plaintiff show a "genuine threat of enforcement" before bringing a pre-enforcement challenge. Plaintiffs have shown no such threat and concede that they face no threatened enforcement action.

In any event, what ultimately matters is not Plaintiffs' view of *MedImmune*, but this Court's view. And since *MedImmune*, this Court has reiterated that "[a]ny pre-enforcement analysis starts with our en banc decision in *Thomas*." *Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1142 (9th Cir. 2009). The Court has also consistently continued to apply the

*Thomas* test.[3] This ongoing reliance shows that *MedImmune* is not "clearly inconsistent" with *Thomas*, and thus that this Court should apply *Thomas* here. *See, e.g.*, *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012) (holding that a panel of this Court will ignore prior circuit precedent in favor of subsequent Supreme Court precedent only if the two are "clearly inconsistent," which "is a high standard") (internal quotation marks omitted).

Similarly, the Supreme Court's decision in *Susan B. Anthony List v. Driehaus*, ___ U.S. ___, 134 S. Ct. 2334 (2014), offers Plaintiffs no support, which is presumably why they never cited it. In that free speech case, a nonprofit was accused of violating an Ohio law that barred certain "false statements" related to political campaigns. *Id.* at 2338. The Ohio Elections Commission found probable cause that the nonprofit had broken the law, set a hearing date, and authorized extensive discovery into the organization's political activities. *Id.* at 2339. The nonprofit sued to challenge the law, but while the suit was pending, the proceedings before the Ohio Election Commission were dismissed. *Id.* at 2340. Ohio then argued that the case was not ripe. The Supreme Court disagreed and found that the nonprofit had

---

[3] *See, e.g.*, *Protectmarriage.com*, 752 F.3d at 839; *Libertarian Party of Los Angeles Cty.*, 709 F.3d at 870; *McCormack*, 694 F.3d at 1021; *Oklevueha Native Am. Church*, 676 F.3d at 835; *Baldwin*, 654 F.3d at 879; *Human Life of Wash.*, 624 F.3d at 1000; *Stormans, Inc.*, 586 F.3d at 1122.

sufficiently shown injury. In doing so, the Court created no new rule and overturned no precedent. Instead, it simply applied its prior cases, noting that "we have permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent." *Id.* at 2342. The Court noted that the nonprofit intended to continue the very type of "political speech" for which it had been charged previously, *id.* at 2343-44, that the Ohio Election Commission had already found probable cause to believe that the organization had violated the statute, *id.* at 2344, and that there was a long history of enforcement of the statute, including against the plaintiff in the case, *id.* at 2345 (noting that there had been 20-80 complaints every year under the statute). The factors that led the Court to find standing are thus entirely consistent with *Thomas* and entirely absent here.

> **2.    A Subjective Chilling of Behavior Due to the Mere Existence of a Statute is No Substitute for an Injury-in-Fact and Does Not Create a Different Standing Test**

Plaintiffs' final argument is that the *Thomas* test is "ill-fitting" for them because they have chosen to modify their behavior based on their own reading of I-594, rather than risk violating the statute. They ask this Court to adopt a special rule for them, finding that their changed behavior itself constitutes harm or requires a different standing test. The Court should decline. The only thing

"ill-fitting" here is Plaintiffs' attempt to create a case or controversy before one actually exists.

### a. The mere existence of a statute does not show injury, even if it chills some behavior

Plaintiffs admit that no one has yet been prosecuted for violating I-594 and that no government official has threatened them with prosecution or even told them that their conduct violates I-594. ER 10. Nonetheless, Plaintiffs complain that I-594's mere existence and their subjective decisions to forego certain behavior based on their own interpretation of the law cause them harm. This Court has never allowed plaintiffs to manufacture standing in this manner.

This Court has repeatedly held that "[n]either the 'mere existence of a proscriptive statute' nor a 'generalized threat of prosecution' satisfies the 'case or controversy' requirement." *Wolfson*, 616 F.3d at 1058 (quoting *Thomas*, 220 F.3d at 1139).[4] "Every criminal law, by its very existence, may have some chilling effect on personal behavior," *San Diego Cty. Gun Rights Comm.*, 98 F.3d at 1129, but "neither self-censorship nor subjective chill is the functional

---

[4] *See also, e.g.*, *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 656 (9th Cir. 2002); *Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983) ("The mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III.").

equivalent of a well-founded fear of enforcement." *Humanitarian Law Project*, 578 F.3d at 1143.

This approach is not unique to the Ninth Circuit. Even in the specialized First Amendment context, discussed below, the Supreme Court has drawn a line between "[a]llegations of a subjective chill" and "actual harm": "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm; 'the federal courts established pursuant to Article III of the Constitution do not render advisory opinions.'" *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (quoting *United Pub. Workers of Am. (C.I.O) v. Mitchell*, 330 U.S. 75, 89 (1947)). To avoid rendering advisory opinions on constitutional questions, "concrete legal issues, presented in actual cases, not abstractions, are requisite." *United Pub. Workers*, 330 U.S. at 89.

For example, in *W.E.B. DuBois Clubs of America v. Clark*, 389 U.S. 309 (1967), the plaintiffs wished to challenge a law before a determination that the law applied to them. The Supreme Court dismissed the case because "[t]he effect would be that important and difficult constitutional issues would be decided devoid of factual context and before it was clear that appellants were

covered by the Act." *Id.* at 312. "[T]he District Court should not be forced to decide these constitutional questions in a vacuum." *Id.*

Likewise here, I-594 is still in its infancy. Washington prosecutors have not made charging decisions. Washington courts have not interpreted the law. Plaintiffs have not been prosecuted, threatened with prosecution, or even told by any government official that their conduct violates I-594. Instead, Plaintiffs have developed their own reading of the law in an attempt to manufacture a dispute. That is not enough to create a case or controversy under Article III. With no well-founded fear of enforcement, the subjective chilling of Plaintiffs' behavior is not a stand-in for real injury.

> **b.** **A subjective chilling of behavior does not give rise to a different standing test, such as the First Amendment test**

Plaintiffs repeatedly suggest that because they are refraining from certain activity that they believe I-594 prohibits, the Court should apply a more lenient approach to standing, which it has sometimes done in other cases. Br. of Appellants at 16-17. The argument is unpersuasive for four reasons.

First, this Court has explicitly rejected Plaintiffs' claim that a different test applies whenever a person refrains from conduct to avoid violating the law. In *Humanitarian Law Project*, 578 F.3d 1133, a non-profit organization wanted to support the legal activities of two groups that had been designated as foreign

terrorist organizations. *Id.* at 1137-38. But it alleged that it had "been deterred from doing so out of fear that [it], too, will be designated as a terrorist organization." *Id.* at 1138. The non-profit argued that because it was restricting its own conduct, its claim should be analyzed like a free speech claim for standing purposes. *Id.* at 1141-42. This Court rejected the "contention that self-censorship suffices for injury-in-fact." *Id.* at 1138. Instead, the Court held that "[a]ny pre-enforcement analysis starts with our en banc decision in *Thomas*." *Id.* at 1142. The Court noted that it sometimes gives a plaintiff more leeway in establishing standing where the law at issue is "aimed at expression," but it declined to do so because the law at issue was not "aimed at expression." *Id.* Similarly here, I-594 is not "aimed at expression," and there is no basis to apply a more lenient standing test.

Second, and closely related, virtually every case that Plaintiffs cite to support their request for a more lenient standing test arose under the First Amendment.[5] But those very cases make clear that "Constitutional challenges based on the First Amendment present unique standing considerations." *Ariz. Right to Life PAC*, 320 F.3d at 1006. Because free speech is "'of

---

[5] *See, e.g.*, *Human Life of Wash.*, 624 F.3d 990; *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003); *Ariz. Right to Life PAC*, 320 F.3d 1002.

transcendent value to all society, and not merely to those exercising their rights,'" this Court and the Supreme Court have been far more willing to find standing in free speech claims than elsewhere. *Id.* (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)). "Thus, when the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing." *Id.* (internal quotation marks omitted). This case, of course, is not a free speech claim, so these special rules are inapposite.

Plaintiffs briefly argue that "standing analysis under the First and Second Amendments should be identical." Br. of Appellants at 17. But that ignores the repeated statements of this Court and the Supreme Court that First Amendment standing rules are "unique" because of the "transcendent" importance of First Amendment rights and the special harms that come from chilling expression. *See, e.g.*, *Ariz. Right to Life PAC*, 320 F.3d at 1006 (citing *Dombrowski*, 380 U.S. at 486). Moreover, Plaintiffs cite no case adopting their proposed rule. Instead, they cite *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), but that case analogized to the First Amendment only in analyzing the merits of the plaintiffs' claim, not in analyzing standing, as even Plaintiffs' citations to the case acknowledge. *See* Br. of Appellants at 17 (citing *Ezell*, 651 F.3d at 699, 702-03, 706-07, even though the standing analysis is at 694-97). In

short, there is no basis to extend First Amendment standing principles beyond that narrow realm, and this Court has routinely declined to do so. *See, e.g.*, *Humanitarian Law Project*, 578 F.3d at 1142 (refusing to apply First Amendment standing test in challenge to law that "is not aimed at expression"); *United States v. Mindel*, 80 F.3d 394, 398 (9th Cir. 1996) (refusing to extend standing rule in mandamus actions "beyond the First Amendment context").

The third flaw in Plaintiffs' argument is that the two cases they cite that did not involve speech adopted approaches entirely consistent with *Thomas*. For example, in *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013), the individual plaintiff expressed her intention to violate the statute at issue "on a daily basis." *Id.* at 1015. It is hard to imagine a more "concrete plan" under *Thomas*. Based on her stated intention and the interpretation already given to the statute by Arizona law enforcement the Court found that the plaintiff had "established a credible threat of prosecution." *Id.* at 1015-16.

Here, by contrast, Plaintiffs have shown no "credible threat of prosecution." They "explicitly concede that they have no intention of violating I-594," ER 10, and there is no evidence that Washington law enforcement has adopted the interpretation of I-594 that Plaintiffs have asserted. For example,

Plaintiffs Lee and Del Real cannot plausibly claim to be the only cohabiting couple in Washington to share a firearm, yet they can point to no such couple that has been prosecuted or even threatened with prosecution. Likewise, while Plaintiff Waldron has allegedly refrained from checking a firearm in his luggage when traveling to Washington for fear that this would violate I-594, there is no evidence that anyone else has adopted a similarly strained reading of the statute, or that anyone checking a firearm has been prosecuted or threatened with prosecution.[6]

Plaintiffs also rely on *Terrace v. Thompson*, 263 U.S. 197 (1923), as an example of a case cited in *MedImmune* where the Court supposedly took a more lenient approach to standing in a non-First Amendment case. Br. of Appellants at 16. Yet the *MedImmune* Court's description of the case refutes Plaintiffs' claim. In the Court's words: "[I]n *Terrace v. Thompson*, 263 U.S. 197 (1923), the State threatened the plaintiff with forfeiture of his farm, fines, and penalties if he entered into a lease with an alien in violation of the

---

[6] To the extent the Court concludes that resolving the standing issue turns on the precise meaning of I-594's transfer provisions, it should certify that question to the Washington Supreme Court. Defendants informed Plaintiffs of their intention to seek certification on this question if the district court declined to dismiss on standing grounds. SER 4. But for the reasons explained in this brief and in the district court's opinion, Defendants believe such certification is unnecessary given that Plaintiffs have shown no genuine threat of prosecution regardless of the interpretation.

State's anti-alien land law. *Given this genuine threat of enforcement*, we did not require" the plaintiff actually to violate the law. *MedImmune*, 549 U.S. at 129 (emphasis added). Put simply, *Terrace* did not apply a loose standing rule of the sort advocated by Plaintiffs. And it certainly would not allow standing here, where Plaintiffs have not been threatened with prosecution or even alleged that anyone else has been threatened with prosecution.

In short, though these two cases use slightly different terminology than *Thomas*, a "credible threat of prosecution" or "genuine threat of enforcement," the analysis ultimately looks to factors in the "genuine threat of imminent prosecution" test: a concrete plan to violate the law and a sufficiently imminent threat of prosecution. Where plaintiffs have neither, as here, they cannot establish standing regardless of how the test is phrased.

The final flaw in Plaintiffs' argument is that it lacks a clear stopping point. Plaintiffs' position boils down to this: if a plaintiff "intentionally refrain[s] from engaging in activity that" he believes would violate a law, he has standing to challenge that law on constitutional grounds. Br. of Appellants at 11. But that would mean that anyone who opposes a law but complies with it could challenge it. That is not the rule. "Neither the 'mere existence of a proscriptive statute' nor a 'generalized threat of prosecution' satisfies the 'case

or controversy' requirement." *Wolfson*, 616 F.3d at 1058 (quoting *Thomas*, 220 F.3d at 1139). This Court and the Supreme Court have always required more to show that an injury is "(a) concrete and particularized, . . . and (b) actual or imminent." *Lujan*, 504 U.S. at 560. The Court should do the same here.

### c. Even if the Court applied First Amendment standing principles, Plaintiffs would lack standing

Plaintiffs' request that the Court apply First Amendment standing rules here is not only unsupported, it is also unavailing. Even if the Court did so, self-censorship alone is insufficient to establish standing.

This Court has clarified in free speech cases that "[w]e do not mean to suggest that any plaintiff may challenge the constitutionality of a statute on First Amendment grounds by *nakedly asserting that his or her speech was chilled by the statute*." *Cal. Pro-Life Council*, 328 F.3d at 1095 (emphasis added). Rather, a "potential plaintiff must have an actual and well-founded fear that the law will be enforced against [him or her]." *Id.* Here, Plaintiffs nakedly assert that their actions have been chilled. They have not alleged "an actual and well-founded fear that the law will be enforced against" them, because they have no intention of violating the law, they have never been threatened with prosecution for violating the law, and the law has never been enforced against

anyone else. As the district court found, "Plaintiffs' alleged threat of prosecution is not genuine *or* imminent." ER 10 (emphasis added).

In *Lopez v. Candaele*, 630 F.3d 775 (9th Cir. 2010), this Court reiterated that a plaintiff must show a credible threat of enforcement even in First Amendment cases. *Id.* at 785-86. And the Court explained that to assess such a threat, it would look to (1) the government's efforts to enforce the speech restriction against the plaintiff or its past enforcement of the speech restriction against others, (2) whether the plaintiff has alleged "a concrete intent to violate the challenged law," and (3) whether the challenged speech arguably falls within the scope of the statute. *Id.* at 786-88. Applying these factors, Plaintiffs have alleged no threat of enforcement against themselves or anyone else, have alleged no concrete plan to violate I-594, and have not even alleged that any government official has told them that their conduct violates I-594.

It is true that this Court has sometimes allowed self-censorship to substitute for an actual threat of enforcement against the plaintiff in free speech cases. *See, e.g.*, *Protectmarriage.com*, 752 F.3d at 839. But even then the Court has demanded a concrete plan to violate the law and looked to whether the law has been enforced against others. *See, e.g.*, *id.* Here, not a single factor favors Plaintiffs.

In sum, even if the Court accepts Plaintiffs' proposed approach and asks "whether the individuals challenging the statute have alleged a credible threat of prosecution," Br. of Appellants at 16, the answer is "no." Plaintiffs have not alleged that they or anyone else have been prosecuted or even threatened with prosecution for violating I-594. ER 10. They have shown no concrete and imminent injury. *Lujan*, 504 U.S. at 560.

**D.    In the Alternative, This Court Should Affirm Dismissal for Plaintiffs' Failure to Show Prudential Ripeness and Standing**

In the alternative, this Court should affirm the district court's dismissal because Plaintiffs have failed to show that they meet the prudential requirements of ripeness and standing. *See, e.g.*, *Myers v. U.S. Parole Comm'n,* 813 F.2d 957, 959 (9th Cir. 1987) (holding that the decision of the district court may be affirmed on any ground finding support in the record); *Ventura Mobilehome Cmtys. Owners Ass'n v. City of San Buenaventura*, 371 F.3d 1046, 1052 (9th Cir. 2004) (affirming dismissal on ripeness grounds when district court had not reached ripeness issue).

**1.    Prudential Ripeness**

In deciding whether a case meets the prudential aspect of the ripeness doctrine, courts look to "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v.*

*Gardner*, 387 U.S. 136, 149 (1967). Both factors here counsel against attempting to resolve this hypothetical case.

The issues in this case are not fit for judicial decision because Plaintiffs challenge a criminal statute on constitutional grounds before it has ever been enforced and before any state court has even determined whether Plaintiffs' desired actions constitute violations. "[P]rudential considerations of ripeness are amplified where constitutional issues are concerned," *Scott*, 306 F.3d at 662, and courts routinely decline to decide constitutional challenges where there are no facts or applications of the law upon which the court can base its decision, *see Oklevueha Native Am. Church*, 676 F.3d at 837 ("Courts have regularly declined on prudential grounds to review challenges to recently promulgated laws or regulations in favor of awaiting an actual application of the new rule.").

Plaintiffs' complaint is particularly unfit for decision because one of their two claims is a vagueness challenge. Where, as here, a statute "does not implicate First Amendment rights, it may be challenged for vagueness only as applied." *San Diego Cty. Gun Rights Comm.*, 98 F.3d at 1132 (citing *United States v. Martinez*, 49 F.3d 1398, 1403 (9th Cir.1995); *United States v. Mazurie*, 419 U.S. 544, 550 (1975)). And courts are understandably very

reluctant to consider as-applied vagueness challenges, as brought by Plaintiffs here, absent any evidence as to how a law has actually been applied. *See, e.g.*, *San Diego Cty. Gun Rights Comm.*, 98 F.3d at 1132; *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1495 (9th Cir. 1996) ("Where there are insufficient facts to determine the vagueness of a law as applied, the issue is not ripe for adjudication.").

For example, in *San Diego County Gun Rights Committee*, the plaintiffs sought pre-enforcement review of the Crime Control Act's prohibition of the manufacture, transfer, or possession of semiautomatic assault weapons. Because the Act had not been enforced against anyone at the time of the challenge, this Court found the case did not meet the prudential requirements for ripeness. *San Diego Cty. Gun Rights Comm.*, 98 F.3d at 1132-33. "[T]he District Court should not be forced to decide . . . constitutional claims in a vacuum. At this point, a decision on the merits of plaintiffs' constitutional claims would be devoid of any factual context whatsoever." *Id.* at 1132 (citations omitted). The Court went on to note that "the problem presented by the lack of a factual context is particularly acute in light of plaintiffs' vagueness, overbreadth, and ambiguity claims." *Id.*

Similarly here, the district court should not be required to decide the constitutional claims against I-594, including the vagueness claim, in a vacuum devoid of any factual context or prior application of the statute. Plaintiffs set forth no actual controversy as to application of I-594. Rather, they list a variety of hypothetical transactions they would like to engage in but for the initiative's background-check requirements, while also alleging that they are uncertain whether these hypothetical transactions fall under the definition of a "transfer." ER 15-22, 31-32. Because Plaintiffs seek review of constitutional issues based solely on hypothetical situations, the issues presented are not fit for judicial review.

There is also no hardship to Plaintiffs in delaying judicial review. Just as in *San Diego County Gun Rights Committee*, none of the plaintiffs has been charged with violating I-594. *San Diego Cty. Gun Rights Comm.*, 98 F.3d at 1132. Additionally, given that no one has been prosecuted under I-594, no one has threatened Plaintiffs with prosecution, and Plaintiffs have stated they do not intend to violate I-594, Plaintiffs do not "face a credible threat of prosecution." *Id.* at 1132-33. Therefore, as in *San Diego County Gun Rights Committee*, "any hardship caused by [a] decision to delay resolution of plaintiffs' claims does not justify the exercise of jurisdiction." *Id.* at 1132.

## 2.     Prudential Standing

Even where a plaintiff can show Article III standing, courts decline to find standing on prudential grounds in certain circumstances. *See, e.g.*, *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474-75 (1982). Prudential standing requirements prohibit adjudicating "abstract questions of wide public significance" that amount to "generalized grievances" shared by many members of the public. *Id.* Put another way, when plaintiffs make allegations that are "no more than a 'generalized grievance' shared in substantially equal measure by . . . a large class of citizens," the claims fail to merit the exercise of jurisdiction. *San Diego Cty. Gun Rights Comm.*, 98 F.3d at 1131-32.

Here, Plaintiffs allege only a generalized grievance against an initiative enacted by Washington voters. Plaintiffs allege that they wish to engage in various non-commercial transfers of firearms but refrain from doing so due to I-594's background-check requirement. ER 15-22. Plaintiffs additionally allege that they are unable to determine whether certain hypothetical transactions count as "transfers." ER 31-32. But Washington's state courts have not yet construed the non-commercial transfer provision of I-594, militating against a finding of prudential standing in federal court. These allegations are nothing

more than abstract questions potentially relevant "not only [to] the named plaintiffs, but also anyone desiring to" engage in non-commercial firearm transfers in Washington. *San Diego Cty. Gun Rights Comm.*, 98 F.3d at 1132. As such, these grievances are far too general to merit review, and this Court should dismiss this case for lack of prudential standing.

## VII.   CONCLUSION

Plaintiffs ask this Court to resolve the constitutionality of a newly enacted statute that has never been enforced against anyone. Their claim is hypothetical, and their decision to modify their behavior based on their own reading of I-594 fails to establish injury. They have shown no "genuine threat of imminent prosecution," and this Court should not allow them to manufacture a case or controversy before one actually exists. This Court should affirm the dismissal of Plaintiffs' claims.

RESPECTFULLY SUBMITTED this 12th day of November 2015.

ROBERT W. FERGUSON
   *Attorney General*
s/*Noah G. Purcell*
NOAH G. PURCELL
   *Solicitor General*
R. JULY SIMPSON
   *Assistant Attorney General*

JEFFREY T. EVEN
REBECCA R. GLASGOW
   *Deputy Solicitors General*

PO Box 40100
Olympia, WA 98504-0100
360-753-6200
Counsel for Bob Ferguson,
Washington Attorney General's
Office and John R. Batiste

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule of Appellate Procedure 28-2.6, Appellees State of Washington, Bob Ferguson, Washington Attorney General's Office, and John R. Batiste, by and through their undersigned counsel, hereby state that there are no related cases to the instant appeal that are currently pending in this Court.

s/*Noah G. Purcell*
NOAH G. PURCELL
*Solicitor General*

**CERTIFICATE OF COMPLIANCE** (FRAP 32(a)(7))

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit

Rule 32-1, the attached reply brief is proportionately spaced, has a typeface of

14 points or more and contains 7,103 words.

s/*Noah G. Purcell*

NOAH G. PURCELL
*Solicitor General*

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED this 12th day of November 2015, at Olympia, Washington.

s/*Noah G. Purcell*
NOAH G. PURCELL
*Solicitor General*
