No. 15-35452

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NORTHWEST SCHOOL OF SAFETY, *et al.*,

Plaintiffs – Appellants,

v.

BOB FERGUSON, *et al.*,

Defendants – Appellees.

Appeal from the United States District Court
for the Western District of Washington

The Honorable Benjamin H. Settle - Dist. Ct. No. 3:14-cv-6026 BHS

# APPELLANTS' REPLY BRIEF

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
Steven W. Fogg, WSBA #23528
David B. Edwards, WSBA #44680
1001 Fourth Avenue, Suite 3900
Seattle, WA 98154
(206) 625-8600
sfogg@corrcronin.com
dedwards@corrcronin.com

Donald E. J. Kilmer, Jr.
A Professional Corp.
CA State Bar No.: 179986
1645 Willow Street, Suite 150
San Jose, California 95125
(408) 264-8489
Don@DKLawOffice.com

# TABLE OF CONTENTS

ARGUMENT............................................................................................1

  A.  Ninth Circuit Precedent Does Not Require The Strict Application Of *Thomas* In This Case......................................................1

  B.  The Constitutional Issues Underlying This Case Support Standing.....5

  C.  Prudential Standing Is Subject To The Same Analysis As Article III Standing................................................................................8

CONCLUSION.......................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Arizona Right to Life Political Action v. Bayless*,
  320 F.3d 1002 (9th Cir. 2003)..................................................................2, 8

*California Pro-Life Council, Inc. v. Getman*,
  328 F.3d 1088 (9th Cir. 2003)................................................................. 1, 5, 6

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ..................................................6

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ........................................2

*Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990 (9th Cir. 2010)......1, 5

*Humanitarian Law Project v. U.S. Treasury Dep't*,
  578 F.3d 1133 (9th Cir. 2009)...................................................................4

*Jackson v. City & County of San Francisco*,
  829 F. Supp. 2d 867 (N.D. Cal. 2011)................................................... 2, 5, 9

*Laird v. Tatum*, 408 U.S. 1 (1972)...................................................................4

*Majors v. Abell*, 317 F.3d 719 (7th Cir. 2003)...........................................................8

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ..................................................6

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ........................ 2, 6, 9, 10

*San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121 (9th Cir. 1996) ..............4

*Sturgeon v. Masica*, 768 F.3d 1066 (9th Cir. 2014) ..................................................2

*Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014)......................................2

*U.S. v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) ........................................................6

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) ....................................1

*Valley View Health Care, Inc. v. Chapman*,
  992 F. Supp. 1016 (E.D. Cal. 2014) ..................................................................10

*Wolfson v. Brammer*, 616 F.3d 1045 (9th Cir. 2010) .................................................5

*Wollschlaeger v. Governor of Florida*,
 ___ F.3d ___, 2015 WL 8639875 (Dec. 14, 2015 11th Cir.) .................................7

# ARGUMENT

## A. Ninth Circuit Precedent Does Not Require The Strict Application Of *Thomas* In This Case

Plaintiffs do not ask this Court to impose a new standing test that supplants *Thomas v. Anchorage Equal Rights Comm'n.*, despite Defendants' arguments to the contrary. Plaintiffs only seek acknowledgement of what prior cases have already found: strict application of the *Thomas* factors is not appropriate where a plaintiff foregoes behavior in which they have historically engaged and would otherwise prospectively engage, but for the fact that those activities fall within a reasonable objective reading of the challenged statute. *See, e.g., Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1013-16 & n.5 (9th Cir. 2013) (finding standing without direct threat of prosecution); *Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990, 1000-01 (9th Cir. 2010) (finding standing as long as the intended activity "arguably falls within the statute's reach"); *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1093-94 (9th Cir. 2003) (holding that *Thomas* factors did not overrule the "validity of preenforcement challenges to statutes infringing upon constitutional rights").

To hold otherwise asks law-abiding citizens to break the law in order to challenge an obviously vague and overbroad statute that has directly and immediately impacted their lives and businesses. *See MedImmune, Inc. v.*

1

*Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) ("[W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat.");[1] *Arizona Right to Life Political Action v. Bayless*, 320 F.3d 1002, 1007 (9th Cir. 2003) ("[W]e observe that it would turn respect for the law on its head for us to conclude that [plaintiff] lacks standing to challenge the provision merely because [plaintiff] chose to comply with the statute and challenge its constitutionality, rather than to violate the law and await an enforcement action.").

Notably, this Court has already adjudicated a case in which standing was granted by the trial court on virtually identical grounds. *See Jackson v. City & County of San Francisco*, 829 F. Supp. 2d 867 (N.D. Cal. 2011), 746 F.3d 953

---

[1] Defendants' lengthy attempt to distinguish *MedImmune, Inc. v. Genentech, Inc.* fails. The principles in *MedImmune* apply to pre-enforcement challenges, whether those challenges are to private or public action. 549 U.S. 118, 128-29 (2007). The fact that *MedImmune*'s specific holding involved Article III standing with regard to a dispute between private parties does not make it any less applicable to a dispute between citizens and the government. *See id.* at 128-29 (collecting and discussing both private disputes and government prosecution); *see also Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014) (relying on *MedImmune* to determine standing in challenge to criminal statute). The Defendants also fail in minimizing the importance of the principles discussed in *MedImmune*. While it is true that the Ninth Circuit continues to apply the *Thomas* factors, this does not impact the simultaneous applicability and authority of *MedImmune*. *See Susan B. Anthony*, 134 S. Ct. at 2342; *Holder v. Humanitarian Law Project*, 561 U.S. 1, 15 (2010); *Sturgeon v. Masica*, 768 F.3d 1066, 1072 n.3 (9th Cir. 2014), *cert. granted,* 136 S. Ct. 27 (2015).

(9th Cir. 2014), *cert. denied*, 576 U.S. ___, No. 14-704 (June 8, 2015). Defendants do not mention, much less attempt to distinguish *Jackson*, even though it is directly on point. As in *Jackson*, the Plaintiffs here "have not merely alleged that they 'wish and intend' to violate the ordinance in some vague and unspecified way, at some unknown point in the future." *Id.* at 872. Instead, Plaintiffs "allege they own guns now, and that based on their personal views on how it would enhance their personal safety [and businesses], they want to" engage in the same non-commercial transfers in which they have historically engaged. *Id.* "While the time that they will actually [transfer] the guns is unknown . . . that does not undermine the immediacy and concreteness of the injury they have alleged." *Id.*

Plaintiffs' concrete desires to reengage in their historical non-commercial transfers of firearms are encompassed within even the most generous reading of I-594. Plaintiffs have detailed specific non-commercial transfers in which they have engaged in the past and wish to engage in again as a matter of course. [ER 4:15-22 & 28-32 at ¶¶ 5-15 & 37-47]. Not only do these transfers appear to be objectively within the ambit of the statute, it is impractical if not impossible for some Plaintiffs to comply with the statute even if they tried. [ER 4:29-30 at ¶¶ 40 & 42]. Thus, Plaintiffs' actions of intentionally stopping those transfers for fear of prosecution is objectively reasonable and far from the "subjective chill"

found in the cases upon which Defendants rely.

Looking beyond the soundbite quotes of Defendants' "subjective chill" cases to their substantive holdings demonstrates the categorical difference in the Plaintiffs' injuries. *See*, *e.g.*, *Laird v. Tatum*, 408 U.S. 1, 11 (1972) (explaining the stark difference between challenging general Army surveillance practices that may someday lead to detrimental actions and cases where the "challenged exercise of governmental power was regulatory, proscriptive, or compulsory in nature and the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging"); *Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1143 (9th Cir. 2009) (finding nothing on the face of the challenged statute that regulated expressive activities and therefore no action that could be taken against plaintiff); *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996) (holding that plaintiffs had "no articulated concrete plans" to violate the law, and were "thus in a different situation from the plaintiffs granted standing in *Babbitt* because the latter alleged that they had previously engaged in and would continue to engage in acts regulated under the challenged legislation"). In fact, many of the cases cited in Appellees' argument regarding subjective chill are instructive examples of a court finding standing even though no current or expected enforcement against the aggrieved plaintiffs existed. *See,*

*e.g.*, *Wolfson v. Brammer*, 616 F.3d 1045, 1058-61 (9th Cir. 2010) (permitting standing and ripeness even though plaintiff was not subject to an enforcement action at that time, he had never been threatened with enforcement proceedings, and future enforcement proceedings were unlikely); *Cal. Pro-Life,* 328 F.3d at 1093-94 (9th Cir. 2003) (finding standing for part of plaintiff's claim even though there was no evidence of an investigation or intent to prosecute).

While Defendants accuse Plaintiffs of "develop[ing] their own reading of the law in an attempt to manufacture a dispute," Defendants continually refuse to provide what they consider a more reasonable interpretation of the statute, provide guidance to Plaintiffs on how they could avoid prosecution, or state that Plaintiffs' concretely described transfers are not subject to I-594. *See* Brief at 21. Unlike Defendants, Plaintiffs do not ask this Court to take their position at face value. The Court need only compare the allegations in the Complaint with the plain text of the statute to establish the obvious and objective threat of prosecution in this case. *Compare* [ER 4:15-22 & 28-32 at ¶¶ 5-15 & 37-47], *with* [ADD-1 to -10]; *see Human Life*, 624 F.3d at 1000-01; *Jackson*, 829 F. Supp. 2d at 872. This objective threat is the uncontroversial basis of Plaintiffs' standing.

**B. The Constitutional Issues Underlying This Case Support Standing**

Standing in this case is underscored by the constitutional rights at stake.

Although constitutional rights are not necessary to find preenforcement standing based on refraining from acting, *see MedImmune*, 549 U.S. at 128-29, this Court has held that *Thomas* did not overrule the "validity of preenforcement challenges to statutes infringing upon constitutional rights." *California Pro-Life*, 328 F.3d at 1093-94. Accordingly, standing requirements are relaxed when Courts examine fundamental rights jeopardized by confusing, novel or ambiguous laws. *Id.*

There is no doubt that relaxed standing cases involving constitutional rights generally revolve around the First Amendment. However, the emerging analysis of Second Amendment claims is that they should mirror how First Amendment claims are adjudicated. *See District of Columbia v. Heller*, 554 U.S. 570 (2008); *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011); and *U.S. v. Chovan*, 735 F.3d 1127 (9th Cir. 2013). Because the Second Amendment is not a second class right, no new standing tests are required. *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010). No special pleadings are required. No tortured reading of prior cases is necessary. This Court should merely apply the same analysis for Article III standing requirements on Second Amendment cases as the ones already in use for First Amendment cases.

Plaintiffs have not made a naked assertion that I-594 violates their Second Amendment rights. They have alleged a history of engaging in the very

6

conduct that may, or may not (the chief complaint being the ambiguity of the law) be newly classified as a crime by this regulation. I-594's new affirmative duty to use licensed dealers for the non-commercial transfer of all firearms makes previously innocent conduct—sharing and loaning firearms between and among private citizens—subject to criminal sanctions. [ADD-7 to ADD-10]. If public safety is the government's compelling/important justification for I-594, then Washington State cannot simultaneously argue for that justification and against an earnest attempt by its citizens to comply with the law while seeking judicial clarification of their new affirmative duties imposed by that law. Given the almost white-hot issue of gun control (including background checks, regulation of private party transfers, and various other measures), it is inconceivable that Washington State has no intention of enforcing this law although it has refused to do so in cases I-594 dictates it should. [ER 4:25 at ¶¶ 26 & 27]. Accordingly, the issue is that Washington residents cannot determine if, when, what and how their previously innocent activities with firearms are now subject to the new vague and ambiguous law. This confusion, in the face of their historical activities appearing to fall directly within the ambit of I-594 weighs heavily in favor of Plaintiffs' standing. *Cf. Wollschlaeger v. Governor of Florida*, \_\_\_ F.3d \_\_\_, 2015 WL 8639875, at *7 (Dec. 14, 2015 11th Cir.) ("The Act was recently enacted, and the State is defending it, so we may infer

that there is at least some probability that the Act will be enforced if violated.");  *Ariz. Right to Life*, 320 F.3d at 1006 ("[T]o avoid the chilling effects of sweeping restrictions, the Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences."); *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003) ("[I]t may deter constitutionally protected expression because most people are frightened of violating criminal statutes especially when gains are slight . . . .").

In short, before this Court is the simple question of whether an otherwise law-abiding gun-owner who merely violates this private party non-commercial transfer law will be subject to: (1) arrest; (2) posting bail; (3) trial; and (4) jail and fines, just to challenge a law that trenches on a fundamental right? Typical First Amendment plaintiffs risk a nominal fine or a night in jail. Which has the greater chilling effect on a fundamental right?

## C. Prudential Standing Is Subject To The Same Analysis As Article III Standing

Defendants' response brief addresses prudential concerns although the trial court neither discussed nor decided them. [ER 3:11 at n.1]. If this Court finds Article III standing, it should remand to provide the trial court an opportunity to address ripeness and prudential standing.

If this Court chooses to address these issues now, it should be noted that Plaintiffs' claims satisfy ripeness and prudential concerns for all the same reasons that Plaintiffs have sustained Article III injuries:

> Defendants' contention that the plaintiffs' claims are not ripe are based on the same basic arguments as their position on standing, and do not provide a separate basis for dismissal. *See MedImmune*, 549 U.S. at 128 n.8 ("standing and ripeness boil down to the same question in this case.") Similarly, their arguments that the case should be dismissed on prudential standing grounds rest on the same assumptions as to the concreteness and immediacy of plaintiffs' alleged injury. Accordingly, the motion to dismiss must be denied.

*Jackson*, 829 F. Supp. 2d at 872. Defendants reiterate their argument that the lack of enforcement of I-594 prevents ripeness and prudential standing because Plaintiffs' "hypothetical" claims amount to a generalized grievance with the statute that is causing no harm. However, Defendants either mischaracterize or ignore the specific allegations in the Complaint which demonstrate that the Plaintiffs are currently being injured by their inability to undertake specific "transfers" of possession of their currently owned firearms, which is impacting Plaintiffs' lives, businesses, travel, and personal safety. *See* [ER 4:15-22 & 28-32 at ¶¶ 5-15 & 37-47].

Defendants' argument that potential future enforcement of I-594 may better develop the understanding of I-594, does nothing to transform Plaintiffs' current ongoing injuries into uncertain or contingent events that may never occur. This is true even for the claims of constitutional vagueness, because

while the Plaintiffs cannot determine whether the specific "transfers" of possession they are engaging in are actually violations of I-594, they appear to be violations on their face and the State has either disavowed the responsibility to provide guidance or has evidenced an intent to not enforce the statute as written. [ER 4:25-26 & 31-33 at ¶¶ 26-29 & 44-48]. Given this total lack of enforcement of I-594, it is unclear how Defendants can claim that these legal issues may one day be more suitable for review. *See, e.g., Valley View Health Care, Inc. v. Chapman*, 992 F. Supp. 1016, 1033-35 & 1049-50 (E.D. Cal. 2014) (noting that the government's failure to enforce and their "ambivalent position . . . creates no less confusion and uncertainty as to how" the plaintiffs should proceed and, thus, holding that plaintiffs had standing and their claims were ripe). Nor is it clear how the Defendants can claim a lack of hardship when withholding review will require that Plaintiffs continue choosing between violating I-594 and facing criminal prosecution or continuing to refrain from "transferring" possession of their firearms, further endangering their lives, damaging their businesses, and limiting their travel. *See, e.g., MedImmune*, 549 U.S. at 128-29 ("The dilemma posed by that coercion—putting the challenger to the choice between abandoning his rights or risking prosecution—is a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate."). Accordingly, this case involves present and concrete issues fit for judicial review

that would present a significant ongoing hardship to Plaintiffs if they were not addressed by the Court.

## CONCLUSION

The Order Granting Defendants' Motion to Dismiss must be reversed and the case remanded with instructions to permit the case to move forward through discovery and trial if necessary.

Respectfully submitted this 28th day of December, 2015.

                 */s/ Steven W. Fogg*
                 Steven W. Fogg, WSBA #23528
                 David B. Edwards, WSBA #44680

                 */s/ Donald E. J. Kilmer*
                 Donald E. J. Kilmer, Jr., CA #179986

                 *Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

DATED this 28th day of December, 2015.

*/s/ Christy A. Nelson*
Christy A. Nelson