

**Bob Ferguson**
# ATTORNEY GENERAL OF WASHINGTON
Administration Division
PO Box 40100 • Olympia WA 98504-0100 • (360) 753-6200


April 8, 2016                                                    <u>VIA E-FILING</u>



Ms. Molly C. Dwyer
Clerk of the Court
United States Court of Appeals
For the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103-1526

Re:     *Northwest School of Safety, et al. v. Bob Ferguson, et al.*
        Case No. 15-35452
        (Oral argument not yet scheduled)

Dear Ms. Dwyer,

Defendants-Appellees respectfully submit as supplemental authority *Colorado Outfitters Association, et al. v. John Hickenlooper*, No. 14-1290, 2016 WL 1105363 (10th Cir. Mar. 22, 2016). *Colorado Outfitters* is relevant to the Plaintiffs' argument that a subjective chilling of behavior confers standing in the Second Amendment context.

In *Colorado Outfitters*, the Tenth Circuit held that the plaintiffs lacked standing in a pre-enforcement challenge to Colorado statutes requiring a background check for a transfer of a firearm and prohibiting large-capacity magazines. The court held that the plaintiffs lacked standing for two distinct reasons, both relevant here.

First, as here, the plaintiffs had alleged no intention to violate the statutes at issue, instead claiming that their compliance with the statutes burdened them. "But when it comes to standing, such testimony hurts, rather than helps, the plaintiffs' case." *Colorado Outfitters*, 2016 WL 1105363, at *6. Plaintiffs cannot show a credible threat of prosecution "by relying on evidence of their compliance with the challenged statute." *Id.* (citing *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014)).

Second, the plaintiffs claimed that they had previously violated the law on two occasions, but in the first the district attorney had explicitly declined to prosecute, and in the second, there was no evidence that any threat of prosecution had been made or that prosecution was likely. *Id.*

Contrary to plaintiffs' argument here that such evidence shows a "refusal" to enforce the statute and calls for more lenient standing rules, the Tenth Circuit held that this evidence undermined the plaintiffs' claim of standing. *Id.* at *6.

Sincerely,

s/ *Noah G. Purcell*
NOAH G. PURCELL
Solicitor General

Attachment
Cc:     Counsel of Record (w/ attachment)

2016 WL 1105363
Only the Westlaw citation is currently available.
United States Court of Appeals,
Tenth Circuit.

COLORADO OUTFITTERS ASSOCIATION;
Colorado Farm Bureau; National Shooting Sports
Foundation; Magpul Industries; Colorado Youth
Outdoors; USA Liberty Arms; Outdoor Buddies,
Inc.; Women for Concealed Carry; Colorado State
Shooting Association; Hamilton Family Enterprises,
Inc., d/b/a Family Shooting Center at Cherry Creek
State Park; David Bayne; Dylan Harrell; Rocky
Mountain Shooters Supply; 2nd Amendment
Gunsmith & Shooter Supply, LLC; Burrud Arms
Inc., d/b/a Jensen Arms; Green Mountain Guns;
Jerry's Outdoor Sports; Specialty Sports & Supply;
Goods for the Woods, Plaintiffs–Appellants,
v.
John W. HICKENLOOPER, Governor of
the State of Colorado, Defendant–Appellee.
Jim Beicker, Sheriff of Fremont County; Rick
Besecker, Sheriff of Gunnison County; Ronald
Bruce, Sheriff of Hinsdale County; David D.
Campbell, Sheriff of Baca County; James (Jim)
Casias, Sheriff of Las Animas County; Miles Clark;
John B. Cooke; James Crone, Sheriff of Morgan
County; Douglas N. Darr; Chad Day, Sheriff of
Yuma County; Rick Dunlap, Sheriff of Montrose
County; David Encinias, Sheriff of Bent County;
Mike Ensminger, Sheriff of Teller County; James
Faull; Rod Fenske, Sheriff of Lake County; Scott
Fischer, Sheriff of Jackson County; Forrest Frazee;
Peter Gonzalez; Bruce W. Hartman, Sheriff of Gilpin
County; Shayne Heap, Sheriff of Elbert County; Fred
Hosselkus, Sheriff of Mineral County; Tim Jantz;
Fred Jobe; Chris S. Johnson; Rodney Johnson;
Donald Krueger; Larry Kuntz; Sue Kurtz; Terry
Maketa; Jerry Martin, Sheriff of Dolores County;
Dominic Mattivi, Jr., Sheriff of Ouray County; Fred
D. McKee, Sheriff of Delta County; Amos Medina,
Sheriff of Costilla County; Ted B. Mink; John Minor,
Sheriff of Summit County; Tom Nestor, Sheriff of
Lincoln County; Bruce Newman, Sheriff of Huerfano
County; Mike Norris; Brian E. Norton, Sheriff of Rio

Grande County; Randy Peck; Brett L. Powell, Sheriff
of Logan County; Ken Putnam; Tom Ridnour,
Sheriff of Kit Carson County; Grayson Robinson;
Duke Schirard; Justin Smith, Sheriff of Larimer
County; Dennis Spruell; Dave Stong; Charles "Rob"
Urbach, Sheriff of Phillips County; Lou Vallario,
Sheriff of Garfield County; David A. Weaver; Fred
Wegener, Sheriff of Park County; Garrett Wiggins,
Sheriff of Routt County; Si Woodruff; David
Strumillo; John "Smokey" Kurtz, Sheriff of Crowley
County; Steve Reams, Sheriff of Weld County;
Michael T. McIntosh, Sheriff of Adams County; Sam
Zordel, Sheriff of Prowers County; Casey Sheridan,
Sheriff of Kiowa County; Richard Valdez, Sheriff
of Archuleta County; K.C. Hume, Sheriff of Moffat
County; Shannon Keith Byerly, Sheriff of Custer
County; Shawn Mobley, Sheriff of Otero County;
Brett Schroetlin, Sheriff of Grand County; Richard
A. Albers, Sheriff of Clear Creek County; Jon Stivers,
Sheriff of Washington County; Bruce Conrad, Sheriff
of San Juan County; Bill Elder, Sheriff of El Paso
County; Jeff Shrader, Sheriff of Jefferson County;
Dan Warwick, Sheriff of Saguache County; Thomas
James Hanna, Sheriff of Sedgwick County; Gabriel
David Joiner, Sheriff of Cheyenne County; David
C. Walcher, Sheriff of Arapahoe County; Sean
Michael Smith, Sheriff of La Plata County; Steve
Nowlin, Sheriff of Montezuma County; Robert
Jackson, Sheriff of Alamosa County; Tony Spurlock,
Sheriff of Douglas County; Anthony Mazzola,
Sheriff of Rio Blanco County, Plaintiffs–Appellants,
v.
John W. Hickenlooper, Governor of the
State of Colorado, Defendant–Appellee.

Nos. 14–1290, 14–1292.
|
March 22, 2016.

**Synopsis**
**Background:** Gun owners, associations of gun owners
and advocates, and businesses that manufactured or sold
magazines and/or firearms brought action against governor
in his official capacity, alleging that criminal statutes
that banned the sale and possession of "large-capacity
magazines" and expanded mandatory background checks
violated the Second and Fourteenth Amendments, as well

as the Americans with Disabilities Act (ADA). Governor moved to dismiss for failure to state a claim. The United States District Court for the District of Colorado, Marcia S. Krieger, J., 2013 WL 6384218, granted motion in part and denied motion in part. Following bench trial, the District Court, Krieger, J., 24 F.Supp.3d 1050, entered judgment for governor. Plaintiffs appealed.

**Holdings:** The Court of Appeals, Moritz, Circuit Judge, held that:

[1] youth outdoor activities organization lacked Article III standing to challenge statute expanding mandatory background checks;

[2] advocacy organization lacked associational standing;

[3] gun owners waived claim that they had Article III standing to challenge statutes under ADA;

[4] organization lacked Article III standing to challenge criminal statute expanding background checks for firearms under ADA; and

[5] sheriffs lacked Article III standing.

Vacated and remanded.

West Headnotes (21)

**[1]** **Federal Civil Procedure**
    🔑 In General;  Injury or Interest

**Federal Courts**
    🔑 Injury, Harm, Causation, and Redress

To satisfy Article III's case-or-controversy requirement, a plaintiff must demonstrate standing to sue by establishing (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. U.S.C.A. Const.Art. 3, § 2, cl. 1.

Cases that cite this headnote

**[2]** **Federal Civil Procedure**
    🔑 In General;  Injury or Interest

A federal court cannot "assume" a plaintiff has demonstrated Article III standing in order to proceed to the merits of the underlying claim, regardless of the claim's significance. U.S.C.A. Const.Art. 3, § 2, cl. 1.

1 Cases that cite this headnote

**[3]** **Federal Courts**
    🔑 Determination of Question of Jurisdiction

Court of Appeals has jurisdiction to determine the district court's jurisdiction.

Cases that cite this headnote

**[4]** **Federal Civil Procedure**
    🔑 In General;  Injury or Interest

Plaintiffs bear the burden of establishing standing.

Cases that cite this headnote

**[5]** **Federal Courts**
    🔑 Standing

Court of Appeals reviews questions of standing de novo.

Cases that cite this headnote

**[6]** **Federal Civil Procedure**
    🔑 In General;  Injury or Interest

Elements of standing are not mere pleading requirements but rather an indispensable part of the plaintiff's case; thus, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof.

Cases that cite this headnote

**[7]** **Federal Courts**
    🔑 Organization and Jurisdiction of Lower Court;  Venue

Court of Appeals' duty to consider unargued obstacles to subject matter jurisdiction does

not affect its discretion to decline to consider waived arguments that might have supported such jurisdiction.

Cases that cite this headnote

**[8]** **Federal Civil Procedure**
   🔑 In General; Injury or Interest

To satisfy the injury in fact element of Article III standing, a plaintiff must offer something more than the hypothetical possibility of injury; the alleged injury must be concrete, particularized, and actual or imminent. U.S.C.A. Const.Art. 3, § 2, cl. 1.

Cases that cite this headnote

**[9]** **Federal Civil Procedure**
   🔑 In General; Injury or Interest

To satisfy the injury in fact element of Article III standing in the context of a pre-enforcement challenge to a criminal statute, a plaintiff must typically demonstrate (1) an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by the challenged statute, and (2) that there exists a credible threat of prosecution thereunder. U.S.C.A. Const.Art. 3, § 2, cl. 1.

Cases that cite this headnote

**[10]** **Federal Courts**
   🔑 Waiver of Error in Appellate Court

By arguing on appeal that businesses that manufactured or sold magazines and/or firearms had standing to challenge criminal state statute expanding mandatory background checks for weapons purchases, only by virtue of their economic injuries, plaintiffs waived any argument that either business intended to violate the statute and faced a credible threat of prosecution as a result. § 18–12–112.

Cases that cite this headnote

**[11]** **Weapons**
   🔑 Constitutional, Statutory, and Regulatory Provisions

Director of youth outdoor activities organization failed to establish organization faced credible threat of prosecution for not obtaining background checks for borrowed firearms, and thus organization lacked Article III standing to challenge state criminal statute that expanded mandatory background checks under Second and Fourteenth Amendments; director indicated the district attorney was aware of, and had explicitly declined to prosecute, one of organization's potential violations, and there was no evidence suggesting organization had been threatened with prosecution, that a prosecution was likely, or even that a prosecution was remotely possible based on other potential violation. U.S.C.A. Const.Art. 3, § 2, cl. 1; U.S.C.A. Const.Amends. 2, 14; Colo. Rev. Stat. Ann § 18–12–112.

Cases that cite this headnote

**[12]** **Federal Civil Procedure**
   🔑 In General; Injury or Interest

Plaintiffs cannot satisfy the credible-threat-of-prosecution test for Article III standing by relying on evidence of their compliance with a challenged statute. U.S.C.A. Const.Art. 3, § 2, cl. 1.

Cases that cite this headnote

**[13]** **Federal Civil Procedure**
   🔑 In General; Injury or Interest

An affirmative assurance of non-prosecution from a governmental actor responsible for enforcing a challenged statute prevents a threat of prosecution from maturing into a credible one that would support Article III standing. U.S.C.A. Const.Art. 3, § 2, cl. 1.

Cases that cite this headnote

**[14]** **Associations**
   🔑 Actions by or Against Associations

To establish an organization has associational standing, plaintiffs must prove, inter alia, that its members would otherwise have standing to sue in their own right.

**[15]** **Weapons**

   🔑 Constitutional, Statutory, and Regulatory Provisions

There was no evidence that gun owner, who was member of organization of gun enthusiasts and advocates, faced credible threat of prosecution under Colorado criminal statute banning sale or possession of large-capacity magazines, and thus owner lacked Article III standing to challenge statute in her own right, as required to support associational standing for organization; owner's possession of large-capacity magazines did not violate statute so long as they remained in her "continuous possession," and owner could not rely on speculation that it would be possible for her to lose continuous possession to establish injury in fact. U.S.C.A. Const.Art. 3, § 2, cl. 1; Colo. Rev. Stat. Ann. § 18–12–302.

Cases that cite this headnote

**[16]** **Federal Civil Procedure**

   🔑 In General; Injury or Interest

Standing is not dispensed in gross; rather, a plaintiff must demonstrate standing for each claim he seeks to press.

1 Cases that cite this headnote

**[17]** **Federal Courts**

   🔑 Waiver of Error in Appellate Court

Gun owners waived claims that they had Article III standing to challenge criminal statutes that banned the sale and possession of "large-capacity magazines" and expanded mandatory background checks under the ADA, where owners failed to argue on appeal they satisfied the elements of constitutional standing. U.S.C.A. Const.Art. 3, § 2, cl. 1; Americans with Disabilities Act of 1990, § 201(2), 42 U.S.C.A. § 12131(2); Colo. Rev. Stat. Ann. §§ 18–12–112, 18–12–302.

Cases that cite this headnote

**[18]** **Federal Courts**

   🔑 Civil Rights and Discrimination in General

A disabled individual claiming discrimination under the ADA must still satisfy the case or controversy requirement of Article III to invoke federal jurisdiction. U.S.C.A. Const.Art. 3, § 2, cl. 1; Americans with Disabilities Act of 1990, § 201(2), 42 U.S.C.A. § 12131(2).

Cases that cite this headnote

**[19]** **Federal Courts**

   🔑 Waiver of Error in Appellate Court

Gun advocacy organization waived claim that it had Article III standing to challenge criminal statute banning sale or possession of large-capacity magazines under ADA, absent assertion on appeal that it suffered any injury under such statute. U.S.C.A. Const.Art. 3, § 2, cl. 1; Americans with Disabilities Act of 1990, § 201(2), 42 U.S.C.A. § 12131(2); Colo. Rev. Stat. Ann. § 18–12–302.

Cases that cite this headnote

**[20]** **Weapons**

   🔑 Constitutional, Statutory, and Regulatory Provisions

Gun advocacy organization lacked Article III standing to challenge criminal statute expanding background checks for firearms under ADA; organization could not establish injury in fact based on "some day" injuries. U.S.C.A. Const.Art. 3, § 2, cl. 1; Americans with Disabilities Act of 1990, § 201(2), 42 U.S.C.A. § 12131(2); Colo. Rev. Stat. Ann. § 18–12–112.

Cases that cite this headnote

**[21]** **Weapons**

   🔑 Constitutional, Statutory, and Regulatory Provisions

Sheriffs failed to establish they had constitutional standing in any capacity to challenge state criminal statutes that banned the sale and possession of "large-capacity magazines" and expanded mandatory

background checks; any threat of prosecution based on the sheriffs' performance of their official job duties was purely speculative. U.S.C.A. Const.Art. 3, § 2, cl. 1; Colo. Rev. Stat. Ann. §§ 18–12–112, 18–12–302.

Cases that cite this headnote

Appeal from the United States District Court for the District of Colorado (D.C. No. 1:13–CV–01300–MSK–MJW).

**Attorneys and Law Firms**

Richard A. Westfall, Hale Westfall, LLP, Denver, CO, (Peter J. Krumholz, Hale Westfall, LLP, Denver, CO, Marc F. Colin, Bruno Colin & Lowe PC, Denver, CO, Anthony J. Fabian, Law Offices of Anthony J. Fabian PC, Castle Rock, CO, and Douglas Abbott, Holland & Hart LLP, Denver, CO, with him on the briefs), for Plaintiffs–Appellants Nonprofit Organizations, Disabled Firearms Owners, Firearms Manufacturers and Dealers, David Bayne, Colorado Farm Bureau, Colorado Outfitters Association, Outdoor Buddies, Inc., Women for Concealed Carry, and Dylan Harrell.

David B. Kopel, Independence Institute, Denver, CO, for Plaintiffs–Appellants Sheriffs and David Strumillo.

Matthew D. Grove, Assistant Solicitor General (Cynthia H. Coffman, Attorney General, Kathleen L. Spalding and Stephanie L. Scoville, Senior Assistant Attorneys General, and LeeAnn Morrill, First Assistant Attorney General), Colorado Department of Law, Denver, CO, for Defendant–Appellee John W. Hickenlooper. [1]

Before HOLMES, McHUGH, and MORITZ, Circuit Judges.

**Opinion**

MORITZ, Circuit Judge.

**\*1** The underlying issues in these appeals are significant and concern the extent to which the Second Amendment limits Colorado's power to regulate firearms and large-capacity magazines. But preliminarily, we first grapple with a more fundamental question: the extent to which Article III of the United States Constitution limits our power—and the district court's power—to hear the plaintiffs' [2] claims at all. Because we conclude the plaintiffs failed to establish Article

III standing to bring any of their claims, we vacate the district court's order granting judgment for the defendant [3] and remand with directions to dismiss the action for lack of jurisdiction.

**BACKGROUND**

Colo.Rev.Stat. § 18–12–112 and Colo.Rev.Stat. § 18–12–302 became effective on July 1, 2013. With some exceptions, § 18–12–112 requires background checks for private firearm transfers that exceed 72 hours, while § 18–12–302 generally prohibits the possession, sale, and transfer of large-capacity magazines (LCMs), [4] again with some exceptions. In particular, § 18–12–302(3)(b)(II) exempts from the LCM ban those state and federal employees who carry firearms in the course of their official duties, while § 18–12–302(2)(a)'s grandfather clause allows individuals to possess LCMs they owned as of July 1, 2013, as long as they maintain continuous possession of the LCMs thereafter.

Several organizations, individuals, and businesses brought suit against Colorado's governor, John Hickenlooper, arguing the statutes violate the Second Amendment, the Fourteenth Amendment, and the Americans with Disabilities Act (ADA). But it was clear from this litigation's inception that the plaintiffs' standing to assert these claims was less than assured; the parties litigated the issue at every turn. As the result of one of these bouts of jurisdictional wrangling, the district court concluded several Colorado sheriffs lacked standing to bring their claims and dismissed them from the case.

After a nine-day bench trial, the district court expressed skepticism that any of the remaining plaintiffs had established standing to challenge § 18–12–112 and § 18–12–302. Nevertheless, "with the benefit of some generous assumptions," it found that at least one plaintiff had standing to challenge each statute. App. at 1762. After winning the jurisdictional battle, however, the plaintiffs ultimately lost the war; the district court entered judgment in favor of the defendant on all claims.

The plaintiffs appeal, arguing the district court made both procedural and substantive errors in rejecting their claims. They insist the district court erred in, among other things, applying the incorrect level of scrutiny to the plaintiffs' Second Amendment claims; concluding the statutes survive intermediate scrutiny; ruling that § 18–12–

302 isn't unconstitutionally vague; dismissing the plaintiffs' ADA claims; considering information that isn't part of the legislative record; and failing to provide any analysis to support certain evidentiary rulings. The defendant disagrees, maintaining we should affirm the district court's judgment in all respects.

## DISCUSSION

**\*2** **[1]** Under Article III of the United States Constitution, federal courts only have jurisdiction to hear certain " 'Cases' and 'Controversies.' " *Susan B. Anthony List v. Driehaus,* —— U.S. ——, ——, 134 S.Ct. 2334, 2341, 189 L.Ed.2d 246 (2014) (quoting U.S. Const. art. III, § 2). To satisfy Article III's case-or-controversy requirement, a plaintiff must demonstrate standing to sue by establishing "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.' " *Id.* at 2341 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

Here, the district court expressed "profound reservations as to whether" any of the plaintiffs established standing to challenge § 18–12–112. App. at 1768. Nevertheless, "in the interests of providing a complete ruling," the district court "assume[d]" that three plaintiffs had done so. *Id.* Likewise, "in an attempt to find standing" and "with the benefit of some generous assumptions," the district court concluded that one plaintiff had standing to challenge § 18–12–302. *Id.* at 1761–62 and 1762 n. 11.

**[2]** But a federal court can't "assume" a plaintiff has demonstrated Article III standing in order to proceed to the merits of the underlying claim, regardless of the claim's significance. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (explaining that "such an approach ... carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers"). [5] Thus, our first task is to determine whether the district court's assumptions about standing were correct. [6] If not, we may go no further. *See id.* at 110 (vacating judgment and remanding to district court with directions to dismiss complaint because respondent lacked standing to maintain suit).

**[3]** **[4]** **[5]** **[6]** Before we begin this task, we note certain procedural ground rules. First, we have jurisdiction

to determine the district court's jurisdiction. *See id.* at 95 (explaining that when a lower federal court lacks jurisdiction, a reviewing court nevertheless has jurisdiction to "correct [ ] the error of the lower court in entertaining the suit" in the first instance (quoting *United States v. Corrick,* 298 U.S. 435, 440, 56 S.Ct. 829, 80 L.Ed. 1263 (1936))). Second, the plaintiffs bear the burden of establishing standing. *Raines v. Byrd,* 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). Third, we review questions of standing de novo. *Wyoming ex rel. Crank v. United States,* 539 F.3d 1236, 1241 (10th Cir.2008). Fourth, the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Lujan,* 504 U.S. at 561. Thus, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Id.* Because this case proceeded to trial, we therefore look to the evidence presented there to determine whether the plaintiffs carried their burden of proving standing. *See Glover River Org. v. U.S. Dep't of Interior,* 675 F.2d 251, 254 n. 3 (10th Cir.1982) (explaining that when a case proceeds to trial, "standing is evaluated not on the pleadings alone but on the basis of all the evidence in the record").

**\*3** **[7]** Finally, while it's hornbook law that the "lack of federal jurisdiction cannot be waived or be overcome by an agreement of the parties," *Wellness Int'l Network, Ltd. v. Sharif,* —— U.S. ——, ——, 135 S.Ct. 1932, 1956, 191 L.Ed.2d 911 (2015) (quoting *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338 (1934)), "[o]ur duty to consider unargued *obstacles* to subject matter jurisdiction does not affect our discretion to decline to consider waived arguments that might have *supported* such jurisdiction," *United States ex rel. Ramseyer v. Century Healthcare Corp.,* 90 F.3d 1514, 1518 n. 2 (10th Cir.1996). Thus, we consider only those arguments in favor of standing that the plaintiffs have adequately briefed. *See Raley v. Hyundai Motor Co.,* 642 F.3d 1271, 1275 (10th Cir.2011) ("It is the appellant's burden, not ours, to conjure up possible theories to invoke our legal authority to hear their appeal."); *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 679 (10th Cir.1998) (explaining inadequately briefed arguments are waived).

## I. The plaintiffs have waived any argument that the district court erred in adopting the credible-threat-of-prosecution test.

**[8]** As discussed above, standing generally has three requirements: (1) an injury in fact; (2) causation; and (3)

redressability. *Lujan,* 504 U.S. at 560–61. To satisfy the first of these three elements, a plaintiff must offer something more than the hypothetical possibility of injury. The alleged injury must be concrete, particularized, and actual or imminent. *Id.* at 560. And while " 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *'certainly* impending.' " *Id.* at 564 n. 2 (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)).

**[9]** To establish such an injury in the context of a pre-enforcement challenge to a criminal statute, [7] a plaintiff must typically demonstrate (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the challenged] statute," and (2) that "there exists a credible threat of prosecution thereunder." *Susan B. Anthony List,* 134 S.Ct. at 2342 (quoting *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)). The district court repeatedly explained it would adopt and apply this two-part test for purposes of the plaintiffs' claims.

The plaintiffs do not directly challenge this ruling on appeal. True, they assert in their opening brief that the district court erred in concluding that licensed firearms dealers Burrud Arms Inc. and Rocky Mountain Shooters Supply lacked standing to challenge the statutes because both businesses (1) suffered economic injuries based on the LCM ban; and (2) sought to challenge the statutes on behalf of third parties seeking their services. But the plaintiffs don't even acknowledge that the district court adopted the credible-threat-of-prosecution test, let alone address the obvious tension between that decision and the non-binding authority they cite, without elaboration, to support their suggestion that economic injuries might instead suffice.

**\*4** The only binding authority the plaintiffs cite in support of their economic-injury argument is *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976). According to the plaintiffs, *Danforth* stands for the proposition that businesses providing "constitutionally related services have standing in their own right to challenge [criminal] statutes that injure them," even if their injuries are solely economic. Nonprft. Br. at 48 & n. 29. But *Danforth* lends no support to the plaintiffs' broad assertion of standing here. There, the Court concluded the physician-appellants had standing because they faced

criminal prosecution if they performed abortions in violation of the challenged statute, *see Danforth,* 428 U.S. at 59, 62, *not* because the challenged statute had an adverse economic impact on their businesses, as the plaintiffs suggest.

In addition to *Danforth,* the plaintiffs also cite *Ezell v. City of Chicago,* 651 F.3d 684, 696 (7th Cir.2011) (concluding "supplier of firing-range facilities" had standing to challenge firing-range ban because (1) supplier was harmed by ban; and (2) supplier was permitted to advocate for rights of those seeking its services) and *National Rifle Ass'n of America v. Magaw,* 132 F.3d 272, 290 (6th Cir.1997) ("When a statute creates substantial economic burdens and compliance is coerced by the threat of enforcement, it is not necessary to determine whether a plaintiff subject to the regulation has sufficiently alleged an intention to refuse to comply."). While compelling arguments may exist as to why we should adopt a similar approach here, the plaintiffs fail to make those arguments in their opening brief, and we decline to make them on their behalf. *United States v. Apperson,* 441 F.3d 1162, 1195 (10th Cir.2006) (refusing to consider argument because appellant "fail[ed] to offer any detailed explanation of how the district court erred"). Accordingly, we leave for another day the question of whether an economic injury, standing alone, can constitute an injury-in-fact for purposes of a pre-enforcement challenge to a criminal statute. *See Raley,* 642 F.3d at 1275 (declining to answer complex standing question without adequate briefing).

Thus, in analyzing the plaintiffs' standing to challenge § 18–12–302 and § 18–12–112 under the Second and Fourteenth Amendments, we ask only whether the plaintiffs satisfied the test the district court adopted—i.e., whether they proved they intended to engage in conduct that violated the statutes and faced a credible threat of prosecution as a result.

## II. The plaintiffs failed to establish standing to challenge § 18–12–112 under the Second and Fourteenth Amendments.

The plaintiffs first raised a Second Amendment challenge to § 18–12–112, which with some exceptions requires background checks for private firearm transfers exceeding 72 hours. According to the final pretrial order, 20 plaintiffs asserted a Second–Amendment challenge to § 18–12–112: Colorado Outfitters Association; Colorado Farm Bureau; National Shooting Sports Foundation; Magpul Industries; Colorado Youth Outdoors; USA Liberty Arms; Outdoor Buddies, Inc.; Women for Concealed Carry; Colorado State Shooting Association; Hamilton Family Enterprises,

Inc.; David Strumillo; David Bayne; Dylan Harrell; Rocky Mountain Shooters Supply; 2nd Amendment Gunsmith & Shooter Supply, LLC; Burrud Arms Inc.; Green Mountain Guns; Jerry's Outdoor Sports; Specialty Sports & Supply; and Goods for the Woods.

**\*5  [10]**  The district court found the plaintiffs presented no evidence at trial regarding the standing of National Shooting Sports Foundation, USA Liberty Arms, 2nd Amendment Gunsmith & Shooter Supply, Green Mountain Guns, Jerry's Outdoor Sports, Specialty Sports & Supply, Goods for the Woods, or David Strumillo. The plaintiffs do not challenge this finding on appeal. Nor do they challenge the district court's ruling that Bayne, Harrell, Hamilton Family Enterprises, and Magpul Industries lacked standing to challenge § 18–12–112; or its ruling that Outdoor Buddies, Colorado Farm Bureau, Colorado Outfitters Association, Women for Concealed Carry, Colorado Youth Outdoors, and Colorado State Shooting Association lacked associational standing to challenge § 18–12–112 on behalf of their members; [8] or its finding that Outdoor Buddies didn't demonstrate that either it or its members faced prosecution under § 18–12–112. Thus, the plaintiffs have waived any challenge to those rulings for purposes of appeal. Likewise, by arguing in their opening brief that Burrud Arms Inc. and Rocky Mountain Shooters Supply have standing only by virtue of their economic injuries, the plaintiffs have waived any argument that either business intended to violate § 18–12–112 and faced a credible threat of prosecution as a result.

**[11]**  That leaves us to determine whether five plaintiffs—Colorado Farm Bureau, Colorado Outfitters Association, Women for Concealed Carry, Colorado Youth Outdoors, and Colorado State Shooting Association—had standing in their own right to challenge § 18–12–112. But the district court didn't address Colorado Farm Bureau's or Colorado Outfitters Association's standing to challenge § 18–12–112 in their own right (perhaps because it believed the organizations were only challenging the statute on behalf of their members), and the plaintiffs neither argue this was error nor cite any evidence suggesting the organizations intended to violate § 18–12–112. Thus, we will only consider the evidence as it relates to Women for Concealed Carry, Colorado Youth Outdoors, and Colorado State Shooting Association and their standing to challenge § 18–12–112 in their own right under the credible-threat-of-prosecution test. [9]

At oral argument, we pressed the plaintiffs' counsel to identify the single plaintiff who had the strongest standing

to challenge § 18–12–112 under the credible-threat-of-prosecution test. In response, counsel identified Robert Hewson. Of course, Hewson isn't a plaintiff in this action. But he did testify on behalf of Colorado Youth Outdoors. And because the plaintiffs identify his as the testimony most likely to establish standing, we begin our sua sponte review of the record there.

Hewson, who is Colorado Youth Outdoors' executive director, testified at trial to the burden that complying with § 18–12–112 has imposed on his organization. For instance, Hewson explained that before § 18–12–112 became effective, Colorado Youth Outdoors could borrow firearms for use in its annual fundraiser. Since § 18–12–112's effective date, however, those loans have ceased.

**\*6  [12]**  Perhaps this testimony would weigh in the plaintiffs' favor if we were resolving the merits of their claim. *See, e.g., United States v. Reese,* 627 F.3d 792, 800 (10th Cir.2010) (adopting "two-pronged approach to Second Amendment challenges" that asks, in part, "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee" (quoting *United States v. Marzzarella,* 614 F.3d 85, 89 (3d Cir.2010))). But when it comes to standing, such testimony hurts, rather than helps, the plaintiffs' case: if § 18–12–112's background-check requirement has burdened or will burden Colorado Youth Outdoors, that burden is the result of the organization's *compliance* with § 18–12–112. And the plaintiffs can't satisfy the credible-threat-of-prosecution test by relying on evidence of their compliance with the challenged statute. *See Susan B. Anthony List,* 134 S.Ct. at 2342.

**[13]**  In addition to testifying about the burdens of compliance, however, Hewson also testified that Colorado Youth Outdoors engaged in conduct on two previous occasions that may have violated § 18–12–112. Yet Hewson indicated the district attorney was aware of—and had explicitly declined to prosecute—one of those potential violations. And such an "affirmative assurance [ ] of non-prosecution from a governmental actor responsible for enforcing the challenged statute prevents a 'threat' of prosecution from maturing into a 'credible' one." *Bronson v. Swensen,* 500 F.3d 1099, 1108 (10th Cir.2007).

As for the other potential violation, the plaintiffs offered no evidence suggesting Colorado Youth Outdoors had "ever been threatened with prosecution, that a prosecution [was] likely, or even that a prosecution [was] remotely possible"

based on that previous conduct. *Babbitt,* 442 U.S. at 298–99 (quoting *Younger v. Harris,* 401 U.S. 37, 42, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). Thus, this incident can't form the basis of "a dispute susceptible to resolution by a federal court." *Id.* at 299. *See also Winsness v. Yocom,* 433 F.3d 727, 732 (10th Cir.2006) ("The mere presence on the statute books of an unconstitutional statute, in the absence of enforcement or credible threat of enforcement, does not entitle anyone to sue....").

Finally, as the plaintiffs pointed out at oral argument, the district court advised Hewson during cross-examination that some of the questions posed to him might elicit incriminating responses about Colorado Youth Outdoors' firearm transfers. But Hewson subsequently invoked his Fifth Amendment right and refused to answer questions about those transfers. And we know of no authority suggesting an individual can prove standing by refusing to testify about the very events that might confer it. Thus, we conclude the plaintiffs failed to prove Colorado Youth Outdoors had standing to challenge § 18–12–112.

Arguably, we could stop there. The plaintiffs suggested at oral argument that if *anyone* had standing to challenge § 18–12–112, it was Hewson (and by extension Colorado Youth Outdoors). And because we conclude the plaintiffs failed to establish Colorado Youth Outdoors had standing, the plaintiffs' statement at oral argument amounts to an implicit concession that neither Women for Concealed Carry nor Colorado State Shooting Association had standing either.

**\*7** Nevertheless, in an abundance of caution, we have reviewed the parties' stipulations and the testimony of the witnesses who appeared on behalf of these two organizations as well, and we see no evidence indicating they had even a general intent to engage in conduct that might violate § 18–12–112, let alone any specific plans to do so. On the contrary, these witnesses—like Hewson—testified to the inconveniences their organizations have encountered or might encounter in *complying* with § 18–12–112. For instance, Colorado State Shooting Association's vice president stated that concerns about § 18–12–112 led the organization to suspend its rifle-loan program. And a member of Women for Concealed Carry testified regarding the organization's concern that § 18–12–112 would make it more difficult to loan firearms to women seeking to protect themselves from domestic abusers.

Absent any testimony indicating that Colorado Youth Outdoors, Women for Concealed Carry, or Colorado State Shooting Association intended to engage in conduct that might violate § 18–12–112, we conclude the plaintiffs failed to establish any of these organizations had standing to challenge § 18–12–112 in their own right. *Compare Susan B. Anthony List,* 134 S.Ct. at 2338, 2343 (holding plaintiffs had standing to challenge statute that prohibited making certain statements during course of political campaign because plaintiffs "pleaded specific statements they intend to make in future election cycles"), *with Dias v. City & Cty. of Denver,* 567 F.3d 1169, 1176–77 (10th Cir.2009) (finding plaintiffs lacked standing to seek prospective relief from Denver's pit bull ordinance because they no longer lived in Denver and expressed no intent to return there with their dogs). Accordingly, we vacate the district court's order entering judgment on the plaintiffs' claim challenging the constitutionality of § 18–12–112 under the Second and Fourteenth Amendments, and remand with directions to dismiss that claim for lack of jurisdiction. *See Wyodak Res. Dev. Corp. v. United States,* 637 F.3d 1127, 1136 (10th Cir.2011).

### III. The plaintiffs failed to establish standing to challenge § 18–12–302 under the Second and Fourteenth Amendments.

The plaintiffs asserted two separate constitutional challenges to § 18–12–302. As relevant here, § 18–12–302 generally prohibits the possession of LCMs, but doesn't apply to (1) state or federal employees who carry firearms in the course of their official duties, or (2) individuals who possess LCMs they owned as of July 1, 2013, as long as they maintain continuous possession of the LCMs thereafter. First, the plaintiffs contended § 18–12–302 violates the Second Amendment. Second, they argued § 18–12–302's grandfather clause is unconstitutionally vague under the Fourteenth Amendment.

In addressing the plaintiffs' standing to assert these claims, the district court again applied the credible-threat-of-prosecution test. More specifically, it asked whether any of the plaintiffs (1) possessed an LCM acquired after July 1, 2013; intended to acquire an LCM after July 1, 2013; or intended to transfer or sell an LCM after July 1, 2013; and (2) faced a credible threat of prosecution for such conduct. "[W]ith the benefit of some generous assumptions," the district court concluded Women for Concealed Carry had associational standing to challenge § 18–12–302 under the Second Amendment. App. at 1762. And "for purposes of completeness of the [c]ourt's decision,"

the district court assumed Women for Concealed Carry had associational standing to pursue the vagueness challenge as well. *Id.* at n. 11.

**\*8** For the reasons discussed above, the district court erred in making assumptions about Women for Concealed Carry's standing in order to reach the merits of the plaintiffs' claims. *See Steel Co.,* 523 U.S. at 94. Thus, we turn once more to the preliminary task of determining whether the district court had jurisdiction to consider those claims in the first place. In doing so, however, we ask only whether the plaintiffs established their standing under the test the district court articulated and applied below—i.e., whether any plaintiffs (1) possessed an LCM acquired after July 1, 2013; intended to acquire an LCM after July 1, 2013; or intended to transfer or sell an LCM after July 1, 2013; and (2) faced a credible threat of prosecution for such conduct. As discussed above, the plaintiffs have waived any argument that the district court should have applied a different test by failing to adequately brief that argument on appeal. *See Adler,* 144 F.3d at 679.

All of the plaintiffs challenged § 18–12–302 under the Second Amendment, and 21 of them asserted the statute was unconstitutionally vague under the Fourteenth Amendment. But we need not consider whether National Shooting Sports Foundation; USA Liberty Arms; 2nd Amendment Gunsmith & Shooter Supply, LLC; Green Mountain Guns; Jerry's Outdoor Sports; Specialty Sports and Supply; Goods for the Woods; David Strumillo; Ken Putnam; James Faull; Larry Kuntz; Fred Jobe; Donald Krueger; Dave Stong; Peter Gonzalez; Sue Kurtz; or Douglas Darr had standing to bring these claims because the district court determined that the plaintiffs presented no evidence at trial regarding their standing, and the plaintiffs do not challenge that finding on appeal. Nor do the plaintiffs challenge the district court's ruling that Bayne, Harrell, and Cooke lacked standing to challenge § 18–12–302. That leaves Colorado Outfitters Association, Colorado Farm Bureau, Magpul Industries, Colorado Youth Outdoors, Outdoor Buddies, Women for Concealed Carry, Colorado State Shooting Association, Hamilton Family Enterprises, Rocky Mountain Shooters Supply, and Burrud Arms Inc. as plaintiffs that might provide standing to challenge § 18–12–302.

But of these plaintiffs, the district court addressed only Women for Concealed Carry's associational standing to challenge § 18–12–302 on behalf of Elisa Dahlberg. And the plaintiffs do not challenge on appeal the district court's failure to address the remaining plaintiffs' standing

below.[10] Thus, we ask only whether the plaintiffs presented sufficient evidence to prove Women for Concealed Carry had associational standing to challenge § 18–12–302 on Dahlberg's behalf.[11] *See Adler,* 144 F.3d at 679 ("Arguments inadequately briefed in the opening brief are waived.").

**[14]** To establish that Women for Concealed Carry had associational standing, the plaintiffs had to prove, inter alia, that its members "would otherwise have standing to sue in their own right." *S. Utah Wilderness All. v. Office of Surface Mining Reclamation & Enf't,* 620 F.3d 1227, 1246–47 (10th Cir.2010) (Ebel, J., dissenting) (quoting *Colo. Taxpayers Union, Inc. v. Romer,* 963 F.2d 1394, 1397–98 (10th Cir.1992)). And in order to make that showing, the plaintiffs had to prove those members satisfied "the injury, causation, and redressability requirements derived from Article III." *Id.* at 1247. Under the test the district court articulated below, that means the plaintiffs had to prove, in part, that at least one member of Women for Concealed Carry (1) possessed an LCM acquired after July 1, 2013; intended to acquire an LCM after July 1, 2013; or intended to transfer or sell an LCM after July 1, 2013; and (2) faced a credible threat of prosecution as a result.

**\*9** **[15]** We have reviewed Dahlberg's testimony, and see no evidence that would support such a finding. Dahlberg testified she owns two 30–round magazines and three 17–round magazines. Because Dahlberg purchased the magazines before July 1, 2013, however, she acknowledged § 18–12–302 doesn't bar her from possessing them as long as they remain in her "continuous possession." *See* § 18–12–302(2)(a). Nevertheless, Dahlberg insisted § 18–12–302 impacts her because "*[e]ventually,*" her LCMs will wear out and because it would be "*possible* " to lose her LCMs (or lose continuous possession of them) in the meantime. App. at 2218 (emphasis added).

Such "some day" speculations are insufficient to establish an injury-in-fact for purposes of Article III standing. *Lujan,* 504 U.S. at 564. Because Dahlberg expressed no concrete plans to engage in conduct that had any potential to violate § 18–12–302, she failed to demonstrate an imminent injury for purposes of mounting a pre-enforcement challenge to that statute. *See Dias,* 567 F.3d at 1176–77. Thus, the plaintiffs failed to prove Dahlberg had standing to challenge § 18–12–302 in her own right, and consequently failed to prove Women for Concealed Carry had standing to challenge § 18–12–302 on her behalf. *See S. Utah Wilderness All.,* 620 F.3d at 1246–47. Accordingly, we have no choice to but to vacate

the district court's order entering judgment on the plaintiffs' claims challenging the constitutionality of § 18–12–302, and remand to the district court with directions to dismiss those claims for lack of jurisdiction.

**IV. The plaintiffs failed to establish standing to challenge § 18–12–302 and § 18–12–112 under the ADA.**
In addition to asserting constitutional challenges to § 18–12–302 and § 18–12–112, four plaintiffs also claimed both statutes violate the ADA's prohibition against discriminating on the basis of disability, *see* 42 U.S.C. § 12132: David Bayne; Dylan Harrell; Outdoor Buddies; and Colorado State Shooting Association, on behalf of its disabled members.

**[16]** It appears the district court failed to separately analyze the plaintiffs' standing to challenge the statutes under the ADA, relying instead on its finding that at least one plaintiff had standing to assert each constitutional claim. "But standing is not dispensed in gross." *Lewis v. Casey,* 518 U.S. 343, 358 n. 6, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). "Rather, 'a plaintiff must demonstrate standing for each claim he [or she] seeks to press....' " *Davis v. Fed. Election Comm'n,* 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008) (quoting *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 352, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006)). Thus, we must determine whether the plaintiffs independently established their standing to challenge § 18–12–302 and § 18–12–112 under the ADA.

The plaintiffs purport to address this issue in their opening brief, first by asserting that Outdoor Buddies proved it had associational standing to challenge the statutes on behalf of its members. But according to the final pretrial order, Outdoor Buddies didn't bring the ADA claim on behalf of its members. Thus, we need not consider whether it had standing to do so.

**\*10** **[17]** **[18]** Next, the plaintiffs argue that Bayne and Harrell had standing to challenge the statutes because they are qualified individuals with disabilities under 42 U.S.C. § 12131(2). While this assertion—assuming it's true—might provide Bayne and Harrell with *statutory* standing to bring an ADA claim, it doesn't automatically give them *constitutional* standing to do so. *See Carolina Cas. Ins. Co. v. Pinnacol Assurance,* 425 F.3d 921, 926 (10th Cir.2005) (distinguishing between statutory and constitutional standing). Instead, "a disabled individual claiming discrimination" under the ADA must still "satisfy the case or controversy requirement of Article III" to invoke federal jurisdiction. *Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 946 (9th Cir.2011). *See*

*also Tandy v. City of Wichita,* 380 F.3d 1277, 1288 (10th Cir.2004) (concluding disabled plaintiff failed to establish Article III standing to seek prospective relief under ADA because, unlike other plaintiffs, he "submitted no affidavit stating an intent to utilize" challenged bus system).

In asserting Harrell and Bayne had standing to challenge § 18–12–302 and § 18–12–112 under the ADA, the plaintiffs don't argue they satisfied the elements of constitutional standing. And we decline to make that argument for them. *See Raley,* 642 F.3d at 1275. Similarly, the plaintiffs don't argue on appeal that Colorado State Shooting Association had standing—constitutional or otherwise—to challenge the statutes under the ADA. Thus, the plaintiffs have waived that argument as well. *See id.*

Finally, the plaintiffs assert Outdoor Buddies had constitutional standing in its own right to challenge the statutes under the ADA. In support, they argue they proved that § 18–12–112 "has needlessly harmed Outdoor Buddies' program of loaning specialized firearms to persons with disabilities for use in guided hunting trips." [12] Nonprft. Br. at 52.

**[19]** **[20]** First, to the extent the plaintiffs fail to assert Outdoor Buddies suffered any injury under § 18–12–302— rather than § 18–12–112—they've waived that argument. *See Raley,* 642 F.3d at 1275. Second, in evaluating Outdoor Buddies' standing to challenge § 18–12–112 under the Second Amendment, the district court found its temporary transfers were largely exempt under § 18–12–112(6)(e)(III), which allows transfers that occur "[w]hile hunting, fishing, target shooting, or trapping." The plaintiffs do not challenge that finding on appeal. Nor do they assert the district court erred in finding that (1) while it might be *convenient* for disabled hunters to keep the modified firearms for more than 72 hours before or after a guided hunting trip, it's not *necessary* for them to do so; and (2) the plaintiffs presented no evidence suggesting disabled hunters would decline to participate in Outdoor Buddies' guided hunting trips if they couldn't retain the firearms for more than 72 hours before or after a hunt. These unchallenged findings severely undermine the plaintiffs' assertion that § 18–12–112 harms Outdoor Buddies' loan program.

**\*11** In any event, the plaintiffs cite only one record page (page 2240 of the Appendix) to support their assertion of harm. There, Harrell—Outdoor Buddies' secretary—testified in hypothetical terms about the *possibility* that a person

"could potentially" need to borrow a firearm the day before a hunt or keep it until the day after, and noted that obtaining a background check under those circumstances "could" be difficult. App. at 2240–41.

The mere possibility that " 'some day' " a member of Outdoor Buddies might wish to obtain or retain a firearm before or after a hunt and that he or she might then experience difficulties obtaining the requisite background check is insufficient to establish an imminent injury for purposes of Article III standing. *Lujan,* 504 U.S. at 564 (concluding individuals' " 'some day' intentions" to travel to foreign lands where they would suffer injury was insufficient to establish an imminent injury for purposes of Article III standing). Thus, we vacate the district court's order entering judgment for the defendant on the plaintiffs' ADA claim and remand to the district court with directions to dismiss that claim for lack of jurisdiction.

## V. The dismissed sheriffs failed to establish standing to challenge either statute.

Based on the foregoing analysis, we conclude the evidence at trial was insufficient to prove any of the plaintiffs who proceeded to trial had standing to challenge § 18–12–302 or § 18–12–112. But that doesn't end our inquiry.

Before trial, the defendant moved to dismiss the official capacity claims of 55 Colorado sheriffs under the political subdivision doctrine. The district court agreed the political subdivision doctrine barred the sheriffs' official capacity claim, concluded the sheriffs were asserting *only* official capacity claims, and entered an order dismissing all the sheriffs' claims. It then denied the sheriffs' motion to alter or amend that order. Later, the district court allowed 11 sheriffs with definite retirement dates to reenter the case to challenge § 18–12–302 in their individual capacities because, upon their retirement, § 18–12–302's law-enforcement exception would no longer apply to them.

On appeal, the plaintiffs argue the district court erred in dismissing the sheriffs' official capacity claims under the political subdivision doctrine. In addition, they argue the district court erred in failing to recognize the sheriffs asserted individual claims all along. Thus, the plaintiffs insist, the district court erred in refusing to alter or amend the order dismissing all of the sheriffs' claims.

**[21]** We need not examine the merits of these arguments because we conclude the dismissed sheriffs failed to establish

they had constitutional standing in *any* capacity to challenge § 18–12–302 or § 18–12–112. Thus, even assuming the district court erred in applying the political subdivision doctrine to the sheriffs' claims or in failing to recognize they were asserting individual claims as well as official-capacity claims, those errors were harmless. [13]

**\*12** As previously discussed, the district court ruled that to establish standing to challenge § 18–12–302 and § 18–12–112, the plaintiffs had to satisfy the credible-threat-of-prosecution test. And, as previously discussed, the plaintiffs do not directly challenge that decision on appeal. Thus, to establish the sheriffs whose claims the district court dismissed had standing to challenge § 18–12–302 and § 18–12–112, the plaintiffs must demonstrate they alleged those sheriffs (1) had "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the challenged] statute," and (2) that "there exist[ed] a credible threat of prosecution thereunder." *Susan B. Anthony List,* 134 S.Ct. at 2342 (quoting *Babbitt,* 442 U.S. at 298).

The plaintiffs fail to satisfy this test on appeal. While they assert § 18–12–112 technically "criminalizes" some of the sheriffs' job duties—such as transferring a firearm to a crime lab for investigation—they concede such acts won't "normally be prosecution priorities." Shrf. Br. at 60–61. Given the plaintiffs' concession, we find any threat of prosecution based on the sheriffs' performance of their official job duties to be purely speculative. *See Babbitt,* 442 U.S. at 298 (explaining that "persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs" (quoting *Younger,* 401 U.S. at 42)). And while the plaintiffs also argue that when a sheriff retires, his or her possession of any LCMs purchased after July 1, 2013, will be "criminalized" under § 18–12–302, they don't suggest that (1) any sheriff alleged an intent to acquire an LCM after July 1, 2013, let alone an intent to keep that LCM upon retirement; or (2) that a particular sheriff faced a credible threat of prosecution as a result. [14]

Moreover, we have reviewed the Second Amended Complaint and we find no allegations there that would satisfy the credible-threat-of-prosecution test. Thus, even assuming the district court erred in ruling the political subdivision doctrine barred the sheriffs' official capacity claims or in construing their claims as official rather than individual in nature, those errors were harmless; the district court was required to dismiss the sheriffs' claims because the sheriffs failed to establish they had constitutional standing

to challenge § 18–12–302 and § 18–12–112. We therefore affirm the district court's order dismissing all claims asserted by the sheriffs in the Second Amended Complaint and its denial of the plaintiffs' motion to alter or amend that order. *See Richison v. Ernest Grp., Inc.,* 634 F.3d 1123, 1130 (10th Cir.2011) (noting "we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal").

## CONCLUSION

Because the plaintiffs failed to carry their burden of establishing Article III standing, the district court lacked jurisdiction to consider their claims. We therefore affirm the district court's order dismissing the sheriffs' claims and its denial of the subsequent motion to alter or amend that order; vacate the district court's order granting judgment in favor of the defendant; remand with directions to dismiss the action for lack of jurisdiction; and dismiss the parties' pending motions as moot.

## APPENDIX A

**\*13** BRADY CENTER TO PREVENT GUN VIOLENCE

*Attorneys on the brief:* Edward T. Ramey, Tierney Paul Lawrence LLP, Denver, Colorado, Robert P. Haney, Jr., Clea P.M. Liquard, and Alan C. Lau, Covington & Burling LLP, New York, New York, and Jonathan E. Lowy, Brady Center to Prevent Gun Violence, Legal Action Project, Washington, D.C.

CONGRESS OF RACIAL EQUALITY, PINK PISTOLS, WOMEN AGAINST GUN CONTROL, DISABLED SPORTSMEN OF NORTH AMERICA, AND SECOND AMENDMENT SISTERS

*Attorney on the brief:* Brian S. Koukoutchos, Mandeville, Louisiana

EVERYTOWN FOR GUN SAFETY

*Attorneys on the brief:* Peter C. Canfield, Jones Day, Atlanta, Georgia, and Gregory A. Castanias and Sparkle L. Sooknanan, Jones Day, Washington, D.C.

LAW CENTER TO PREVENT GUN VIOLENCE

*Attorneys on the brief:* Mark T. Ciani, Katten Muchin Roseman LLP, New York, New York, and Jonathan K. Baum, Katten Muchin Roseman, LLP, Chicago, Illinois.

NATIONAL RIFLE ASSOCIATION OF AMERICA, INC.

*Attorneys on the brief:* Charles J. Cooper, David H. Thompson, Peter A. Patterson, Cooper & Kirk, PLLC, Washington, D.C.

STATE FIREARM RIGHTS ORGANIZATIONS

*Attorneys on the brief:* C.D. Michel, Clinton B. Monfort, Anna M. Barvir, Michel & Associates, P.C., Long Beach, California.

STATES OF NEW YORK, CONNECTICUT, HAWAII, ILLINOIS, IOWA, MARYLAND, MASSACHUSETTS, OREGON, WASHINGTON AND THE DISTRICT OF COLUMBIA

*Attorneys on the brief:* Barbara D. Underwood, Solicitor General, Anisha S. Dasgupta, Deputy Solicitor General, Claude S. Platton, Assistant Solicitor General, Eric T. Schneiderman, Attorney General of the State of New York, New York, New York, George Jepsen, Attorney General, Hartford, Connecticut, Lisa Madigan, Attorney General, Chicago, Ilinois, Brian E. Frosh, Attorney General, Baltimore, Maryland, Ellen F. Rosenblum, Attorney General, Salem, Oregon, Karl A. Racine, Attorney General, Washington, D.C., Douglas S. Chin, Attorney General, Honolulu, Hawaii, Thomas J. Miller, Attorney General, Des Moines, Iowa, Maura Healy, Attorney General, Boston, Massachusetts, and Bob Ferguson, Attorney General, Olympia, Washington.

STATES OF UTAH, IDAHO, MONTANA, SOUTH CAROLINA, WYOMING

*Attorneys on the brief:* Sean D. Reyes, Utah Attorney General, and Parker Douglas, Utah Federal Solicitor, Utah Attorney General's Office, Lawrence G. Wasden, Attorney General of Idaho, Tim Fox, Attorney General of Montana, Alan Wilson, Attorney General of South Carolina, and Peter K. Michael, Attorney General of Wyoming.

WESTERN STATES SHERIFFS' ASSOCIATION, COLORADO POLICE PROTECTIVE ASSOCIATION, LAW ENFORCEMENT LEGAL DEFENSE FUND, LAW ENFORCEMENT ACTION NETWORK, LAW ENFORCEMENT ALLIANCE OF AMERICA,

INTERNATIONAL LAW ENFORCEMENT EDUCATORS
AND TRAINERS ASSOCIATION

*Attorney on the brief:* Dan M. Peterson, Dan M. Peterson,
PLLC, Fairfax, Virginia.

**All Citations**

--- F.3d ----, 2016 WL 1105363

Footnotes

1    The names of all amici curiae and the attorneys representing them are contained in Appendix A to this Opinion.

2    In this decision, we refer to all plaintiffs as "the plaintiffs." However, the case involves two groups of plaintiffs, and we
     occasionally refer to the first group as the "Plaintiff–Nonprofits" and the second group as "the Plaintiff–Sheriffs." The first
     group includes Colorado Outfitters Association; Colorado Farm Bureau; National Shooting Sports Foundation; Magpul
     Industries; Colorado Youth Outdoors; USA Liberty Arms; Outdoor Buddies, Inc.; Women for Concealed Carry; Colorado
     State Shooting Association; Hamilton Family Enterprises, Inc., d/b/a Family Shooting Center at Cherry Creek State Park;
     David Bayne, Dylan Harrell; Rocky Mountain Shooters Supply; 2nd Amendment Gunsmith & Shooter Supply, LLC; Burrud
     Arms Inc., d/b/a Jensen Arms; Green Mountain Guns; Jerry's Outdoor Sports; Specialty Sports & Supply; and Goods
     for the Woods. The second group of plaintiffs includes Jim Beicker, Sheriff of Fremont County; Rick Besecker, Sheriff of
     Gunnison County; Ronald Bruce, Sheriff of Hinsdale County; David D. Campbell, Sheriff of Baca County; James (Jim)
     Casias, Sheriff of Las Animas County; Miles Clark; John B. Cooke; James Crone, Sheriff of Morgan County; Douglas
     N. Darr; Chad Day, Sheriff of Yuma County; Rick Dunlap, Sheriff of Montrose County; David Encinias, Sheriff of Bent
     County; Mike Ensminger, Sheriff of Teller County; James Faull; Rod Fenske, Sheriff of Lake County; Scott Fischer,
     Sheriff of Jackson County; Forrest Frazzee; Peter Gonzalez; Bruce W. Hartman, Sheriff of Gilpin County; Shayne Heap,
     Sheriff of Elbert County; Fred Hosselkus, Sheriff of Mineral County; Tim Jantz; Fred Jobe; Chris S. Johnson; Rodney
     Johnson; Donald Krueger; Larry Kuntz; Sue Kurtz; Terry Maketa; Jerry Martin, Sheriff of Dolores County; Dominic Mattivi,
     Jr., Sheriff of Ouray County; Fred D. McKee, Sheriff of Delta County; Amos Medina, Sheriff of Costilla County; Ted B.
     Mink; John Minor, Sheriff of Summit County; Tom Nestor, Sheriff of Lincoln County; Bruce Newman, Sheriff of Huerfano
     County; Mike Norris; Brian E. Norton, Sheriff of Rio Grande County; Randy Peck; Brett L. Powell, Sheriff of Logan County;
     Ken Putnam; Tom Ridnour, Sheriff of Kit Carson County; Grayson Robinson; Duke Schirard; Justin Smith, Sheriff of
     Larimer County; Dennis Spruell; Dave Stong; Charles "Rob" Urbach, Sheriff of Phillips County; Lou Vallario, Sheriff of
     Garfield County; David A. Weaver; Fred Wegener, Sheriff of Park County; Garrett Wiggins, Sheriff of Routt County; Si
     Woodruff; David Strumillo; John "Smoky" Kurtz, Sheriff of Crowley County; Steve Reams, Sheriff of Weld County; Michael
     T. McIntosh, Sheriff of Adams County; Sam Zordel, Sheriff of Prowers County; Casey Sheridan, Sheriff of Kiowa County;
     Richard Valdez, Sheriff of Archuleta County; K.C. Hume, Sheriff of Moffat County; Shannon Keith Byerly, Sheriff of Custer
     County; Shawn Mobley, Sheriff of Otero County; Brett Schroetlin, Sheriff of Grand County; Richard A. Albers, Sheriff of
     Clear Creek County; Jon Stivers, Sheriff of Washington County; Bruce Conrad, Sheriff of San Juan County; Bill Elder,
     Sheriff of El Paso County; Jeff Shrader, Sheriff of Jefferson County; DanWarwick, Sheriff of Saguache County; Thomas
     James Hanna, Sheriff of Sedgwick County; Gabriel David Joiner, Sheriff of Cheyenne County; David C. Walcher, Sheriff
     of Arapahoe County; Sean Michael Smith, Sheriff of La Plata County; Steve Nowlin, Sheriff of Montezuma County; Robert
     Jackson, Sheriff of Alamosa County; Tony Spurlock, Sheriff of Douglas County; and Anthony Mazzola, Sheriff of Rio
     Blanco County.

3    The single defendant in this case is John Hickenlooper, Colorado's governor.

4    Colo.Rev.Stat. § 18–12–301(2)(a)(I) generally defines large capacity magazines as those "capable of accepting, or ...
     designed to be readily converted to accept, more than fifteen rounds of ammunition."

5    While we appreciate the district court's effort to provide us with a "complete ruling," App. at 1768, a ruling that assumes
     the plaintiffs' standing—and by extension assumes the district court's jurisdiction—is necessarily incomplete. In fact, if
     the district court's assumptions were wrong, that "complete" ruling is no ruling at all. *See Cunningham v. BHP Petrol. Gr.
     Brit. PLC,* 427 F.3d 1238, 1245 (10th Cir.2005) (explaining that a judgment entered without jurisdiction is void).

6    Despite the threshold nature of the standing inquiry, the plaintiffs don't address it until late in their briefs—a puzzling
     strategy given the district court's express skepticism and the extent to which the parties litigated the standing issue
     below. Plaintiff–Sheriffs don't address standing until page 55 of their 73–page opening brief. Even then, they address only
     whether the political subdivision doctrine barred their claims, not whether the district court correctly concluded that all but
     11 of the sheriffs failed to establish the requisite injury for purposes of standing. Likewise, Plaintiff–Nonprofits address
     standing on pages 45–48 and 51–53 of their 63–page brief. Even then, they never explicitly challenge the standing test

the district court adopted and applied, nor explain how any of the plaintiffs satisfied that test. The defendant at least briefly disputes the plaintiffs' standing to challenge § 18–12–112 before proceeding to address the merits of that challenge. Yet he mostly insists we don't need to address the standing issue at all because the district court found that at least one plaintiff had standing to challenge each statute. Nevertheless, the parties' failure to adequately address the standing question doesn't absolve us of our duty to do so. *See Hobby Lobby Stores, Inc. v. Sebelius,* 723 F.3d 1114, 1126 (10th Cir.2013) ( "[W]henever standing is unclear, we must consider it *sua sponte* to ensure there is an Article III case or controversy before us."), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.,* ––– U.S. ––––, 134 S.Ct. 2751, 189 L.Ed.2d 675 (2014).

7    At oral argument, the plaintiffs pointed out that § 18–12–112 imposes civil liability as well as criminal penalties. But the district court explicitly characterized both statutes as criminal in its opinion, and the plaintiffs don't challenge that characterization in their opening brief. Thus, we won't address whether § 18–12–112 is a purely criminal statute or, if not, whether its quasi-civil character might impact the appropriate test for the plaintiffs' standing. *See United States v. Burns,* 775 F.3d 1221, 1223 n. 2 (10th Cir.2014) (explaining arguments made for first time at oral argument are waived).

8    In the "Statement of the Case" section of their opening brief, the plaintiffs assert the district court erred in finding that Colorado Farm Bureau, Women for Concealed Carry, and Colorado Youth Outdoors failed to present evidence regarding "firearm acquisition by [their] members." Nonprft. Br. at 13 n. 9. But the plaintiffs don't renew that assertion in the "Argument" section of their brief. Nor do they explicitly challenge the district court's finding that the three organizations lacked associational standing to challenge § 18–12–112. A mere suggestion that the district court erred—made solely in the "Statement of the Case" section of an appellant's brief and not subsequently developed in the "Argument" section—is insufficient to adequately brief an issue for consideration on appeal. *See* Fed.R.App. P. 28(a) (explaining appellant's brief must contain *both* a statement of the case *and* appellant's argument—"under appropriate headings"—and that argument must include "appellant's contentions and the reasons for them"); *Wilburn v. Mid–S. Health Dev., Inc.,* 343 F.3d 1274, 1281 (10th Cir.2003) (explaining we won't "consider issues that are raised on appeal but not adequately addressed").

9    The plaintiffs don't argue in their opening brief that the evidence they presented below was sufficient to show these three organizations satisfied the credible-threat-of-prosecution test. Nevertheless, we decline to treat this particular argument as waived because the district court ruled in the plaintiffs' favor on this point: it "assume[d]" that at least one of these three organizations had standing to challenge § 18–12–112 under the credible-threat-of-prosecution test. App. at 1768. Although we question whether the plaintiffs are entitled to rely on the district court's jurisdictional assumptions given *Steel Co.*'s clear mandate against exercising hypothetical jurisdiction, *see* 523 U.S. at 94, we also recognize that we don't routinely require appellants to shore up on appeal any victories they managed to obtain below. Accordingly, we think it appropriate to sua sponte review the record for evidence that might allow us to affirm the district court's ruling that at least one of these organizations had standing to challenge § 18–12–112 under the credible-threat-of-prosecution test.

10    The plaintiffs do assert the district court erred in failing to find that Burrud Arms Inc. and Rocky Mountain Shooter's Supply had standing based on their economic injuries. For the reasons discussed above, we decline to address that argument.

11    The plaintiffs don't suggest Women for Concealed Carry had associational standing to challenge § 18–12–302 on behalf of any of the other three members of the organization. Thus, we decline to consider that possibility. *See Raley,* 642 F.3d at 1275.

12    We assume for the sake of argument that Outdoor Buddies may assert a pre-enforcement challenge to a criminal statute under the ADA; and that interfering with Outdoor Buddies' loan program, standing alone, would satisfy Article III's injury requirement for purposes of that ADA claim. Because the plaintiffs don't establish standing even with the benefit of those assumptions, we need not resolve whether a disabled plaintiff can assert a pre-enforcement challenge to a criminal statute under the ADA, or whether one who does so must establish standing under the credible-threat-of-prosecution test.

13    Citing *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the plaintiffs insist the defendant bears the burden of proving any errors in the district court's standing analysis were harmless. But *Olano* is a criminal case. In civil cases such as this one, the party asserting an error generally bears the burden of demonstrating it requires reversal. *See Shinseki v. Sanders,* 556 U.S. 396, 409–11, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009) (citing *Olano* and distinguishing between civil and criminal cases for purposes of harmless-error inquiry).

14    The plaintiffs also suggest the sheriffs faced a credible threat of prosecution under § 18–12–303(1), which requires that LCMs "manufactured in Colorado on or after July 1, 2013," to "include a permanent stamp or marking indicating that the [LCM] was manufactured or assembled after July 1, 2013." Shrf. Br. at 63–64, 68. According to the plaintiffs, some sheriffs violate this provision by "adding a one or two-round extender to a 15[-]round magazine, thus 'manufacturing' a magazine which [sic] can accept more than 15 rounds." Shrf. Br. at 64. Even assuming using an extender would constitute manufacturing for purposes of the statute, the plaintiffs don't assert they raised this argument for standing below, let alone "cite the precise reference in the record where the issue was raised and ruled on." 10th Cir. R. 28.2(C)(2). Thus, we

would typically review the argument only for plain error. *See United States v. Barber,* 39 F.3d 285, 287 (10th Cir.1994). But the plaintiffs make no effort to satisfy our plain-error test, which "marks the end of the road" for this argument on appeal. *Richison v. Ernest Grp., Inc.,* 634 F.3d 1123, 1131 (10th Cir.2011).

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

---